UNITED STATES of America, Plaintiff-Appellee,

v.

John David WILSON, Defendant-Appellant.

No. 76–1608.

United States Court of Appeals, Fifth Circuit.

June 8, 1977.

Kenneth L. Yarbrough, Corpus Christi, Tex., for defendant-appellant.

Edward B. McDonough, Jr., U. S. Atty., James R. Gough, George A. Kelt, Jr., Asst. U. S. Attys., Houston, Tex., Joe Garza, Asst. U. S. Atty., Laredo, Tex., for plaintiff-appellee.

Before GEWIN, GEE and FAY, Circuit Judges.

GEE, Circuit Judge:

John David Wilson was convicted of possessing, with intent to distribute, 493 pounds of marijuana and with carrying a firearm during the commission of a felony. 21 U.S.C. § 841(a) (1970), 18 U.S.C. § 924(c)(2) (1971). Appellant's five-year sentence was suspended, and he was placed on probation for the same number of years and was fined $2,000. He appeals, complaining that the search which revealed the contraband was unconstitutional. We affirm the district court's holding that the checkpoint at Randado, Texas, is the functional equivalent of the border and that the search of appellant's pickup camper was reasonable pursuant to 8 U.S.C. § 1357(a)(3) (1952).

On February 5, 1975, two Border Patrol agents in South Texas were returning a load of illegal aliens to Mexico. As they drove south they noticed a Ford pickup camper stopped at a roadside rest area. They stopped to inquire if the driver needed help. The driver explained that his engine had overheated, but an under-the-hood in-

spection revealed no signs of overheating. The agents inquired about the citizenship of Wilson, the driver, who replied that he was an American. The agents walked around the pickup and asked appellant to open the back of the camper. He complied. One agent climbed inside,[1] observed a false ply wood flooring, a bedroll, some cardboard boxes and a can which emitted a strong smell of gasoline. The other agent looked inside the cab of the pickup and saw a handgun lying on the front seat. Seeing no aliens and satisfied that appellant was an American citizen, the two Border Patrol agents terminated their encounter with Wilson. Appellant proceeded north on Highway 649, turned right onto Highway 16, and was stopped at a checkpoint one and one-half miles east of Randado, Texas.

A Border Patrol officer manning the Randado checkpoint asked if Wilson was an American citizen, walked to the back of the camper, looked in the window and saw the false plywood floor which covered an area big enough to hide four or five adults. The agent asked Wilson to open the back of the camper. This agent testified that through the open door he observed what appeared to be white bricks of marijuana showing through holes in the cardboard boxes. He testified that he smelled the odor of marijuana after the camper door was opened.[2] A subsequent search of the Ford pickup revealed additional boxes of marijuana stored below the plywood platform, a .38 pistol, a cigarette rolling machine, binoculars and a radio scanner capable of detecting police radio transmissions.

Appellant complains that the first two agents constituted a roving patrol with no articulable reason to inquire about his citizenship, to inspect under his hood, to peer into his pickup or to ask to look in the back of his camper. Realizing that their investigations violated *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), appellant argues, they allowed appellant to proceed but radioed ahead to alert the Randado checkpoint to the imminent arrival of the suspect pickup.[3] Furthermore, the off-duty officers who had been traveling south before they encountered appellant's pickup, did in fact alter their course to "follow" the pickup back to the Randado checkpoint. Appellant argues that because of these tactics the two searches constituted one continuing search or, alternatively, that under the fruit-of-the-poison-tree doctrine the illegal first search invalidated the second search at the checkpoint. Also, appellant disagrees with the trial court's holding that Randado is the functional equivalent of the border and argues that even if the stop of his pickup at the checkpoint was legal, there was neither probable cause nor consent to search his pickup further after it was stopped. *United States v. Ortiz*, 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975).

Whether or not the roving patrol had reasonable suspicion to justify the officers' inquiries while appellant's pickup was stopped by the side of the road, the agents at the Randado checkpoint were authorized to stop appellant without relying on any information imparted by their roving colleagues because this is the kind of permanent checkpoint where no suspicion is needed to halt an automobile for a citizenship inquiry. *United States v. Martinez-Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976).[4] Appellant's pickup was stopped at

---

1. The facts are disputed whether the agent actually climbed inside the camper or looked inside from the vantage point of the rear bumper. Because of our disposition in this case, we need not resolve this factual controversy.

2. There is another factual controversy about what smells predominated inside appellant's camper. The first officer at the roadside smelled strong gasoline fumes; fifteen or twenty minutes later the second officer detected the strong odor of marijuana from the same enclosure. Because we find that no showing of probable cause was necessary to justify the search at the Randado checkpoint, we need not resolve this olfactory conundrum.

3. As appellant rolled to a stop at the Randado checkpoint, he overheard a radio inquiry, "Is he there yet?", to which the officer replied, "Yes, he's here."

4. The Randado checkpoint consists of a mobile van which is used as an office, a Border Patrol car, portable signs and lights, and a portable

the checkpoint because he traveled east from Randado on Highway 16, not because the first agents alerted the on-duty officers to watch for a 1974 pickup with a handgun on the front seat and a suspicious looking plywood platform in the back. Nor is it true that appellant was herded into the checkpoint. From his roadside position at the intersection of Highways 649 and 2686, appellant could have traveled east on Highway 2686 or south on Highway 649, neither of which would have carried him to Randado. Proceeding north on Highway 649 as he did, he could have turned left on Highway 2687 or left on Highway 16 at Randado to avoid the checkpoint one mile to the east. Even considering that the first set of officers followed appellant's pickup at a safe distance, he was leading and was not compelled to take any designated course. We therefore conclude that the stop at the Randado checkpoint was legal as a stop at a permanent checkpoint whether or not the officers had been alerted that the pickup was approaching.

*Martinez-Fuerte* sanctions only a stop and a citizenship check. The additional search of appellant's pickup must rest on probable cause, on consent, or on its reasonableness as a search at the functional equivalent of the border. The district court held that the Randado checkpoint is the functional equivalent of the border; because we affirm that holding we do not consider the issues of probable cause or consent. The criteria to be evaluated in determining functional equivalency are set forth in *United States v. Alvarez-Gonzalez:* the relative permanence of the checkpoint, the relatively minimal interdiction of domestic traffic, and the capability to monitor international traffic not otherwise practically controllable. 542 F.2d 226, 229 (5th Cir. 1976). *Alvarez-Gonzalez* incorporates the considerations discussed in *United States v. Hart,* 506 F.2d 887 (5th Cir.), *vacated and remanded,* 422 U.S. 1053, 95 S.Ct. 2674, 45 L.Ed.2d 706 (1975), *reaff'd,* 525 F.2d 1199 (5th Cir. 1976) (on remand).

Randado, Texas, is located approximately 32 miles from the border traveling northeast on Highway 16; it is approximately 40 miles from the border traveling north on Highway 649. The checkpoint itself is about one mile east of Randado, just beyond the confluence of these two highways. If Randado is the apex of a triangle formed by Highways 649 and 16, the base of the triangle is U.S. Highway 83, which follows the curvaceous course of the Rio Grande River to connect Rio Grande City, Texas, with Laredo to the west and with other Texas cities to the east. A major Mexican highway parallels the river border on the opposite side.

For more than two hundred miles, these highways run in close proximity to the river and certainly within walking distance for those determined to cross. The presence of these two highways parallel to the river tends to facilitate aliens and smugglers by affording them a wide

generator. While the checkpoint is in operation all traffic is stopped. However, due to inclement weather and lack of manpower, the checkpoint is not continuously operated, and when it is dismantled no trace of its whereabouts remains. The checkpoint was operated 24 hours a day for a one-week period between February 5 and February 12, 1975.

Appellant argues that this checkpoint is only temporary and without a permanent structure cannot qualify as a permanent checkpoint. The Border Patrol testified that the Randado checkpoint is always set up in the same location, that this is a strategic location that would be manned at all times if personnel permitted, and that when the checkpoint is open all traffic is stopped for citizenship inquiries. This checkpoint is operated like the permanent checkpoint at Sarita, which was involved in *Martinez-Fuerte.* See description of temporary and permanent checkpoints in the appendix to Chief Justice Burger's concurring opinion in *Brignoni-Ponce,* 422 U.S. at 900, 909–12, 95 S.Ct. 2574. We refuse to hold that a permanent checkpoint is defined by the presence or absence of a permanent structure. *United States v. Cantu,* 504 F.2d 387 (5th Cir. 1974) (Falfurrias checkpoint is operated as a permanent checkpoint although the location varies slightly to make evasion more difficult). *See also United States v. Alvarez-Gonzalez,* 542 F.2d 226, 229 n. 6 (5th Cir. 1976). Under the teaching of *Martinez-Fuerte,* the Randado checkpoint is a permanent checkpoint at which every car may be stopped for a citizenship inquiry without probable cause or reasonable suspicion.

range of choices in determining where to cross.

United States v. Wilson, 432 F.Supp. 223, 226 (S.D.Tex.1977).

The area to the south and southwest of Randado is sparsely populated:

There are but a few cities in the area and only several small towns. Between these settlements, there are few habitations or people. The roads in the area are lightly travelled. There stands no chain-link or barbed-wire fence to block access from the river. There is no wall. There are no guards on sentry duty, nor are there watchtowers along this frontier. There are dozens of intervals of several miles each where there are no dwellings and no people, and where indeed there is hardly a sign of civilization, other than the vacant road. Depending on the season, the previous rainfall, and the exact location, there are many places where the non-swimmer can wade across. Where the river is deeper, swimmers who were not particularly skilled can still cross with little trouble. In places where it is still deeper or wider, small vessels can cross undetected in the quiet of the night or the isolation of the day. Except where there are small towns, these geographic conditions exist throughout the one-hundred mile long border area from Laredo to Rio Grande City, which lies to the west, southwest, and south of the checkpoint in Randado.

Id. at 226.

Although the trial court's findings predated our decision in Alvarez-Gonzalez, the judge nevertheless gave careful considera-tion to the factors outlined in that opinion. The checkpoint must function like a permanent border checkpoint.[5] The district court found that all traffic passing through the Randado checkpoint was stopped so that no arbitrariness resulted from the field officer's whim or exercise of discretion. The court further found that the checkpoint was always situated at the same location, removing any element of surprise or uncertainty usually connected with temporary checkpoints. Only a shortage of personnel prevented its continuous operation.

The checkpoint must be strategically located to monitor otherwise uncontrolled areas of the border. The district court found that for 100 miles between Rio Grande City and Laredo the Texas-Mexico border is easily crossed by swimmers and nonswimmers and that this stream of illegal traffic is not checked by any physical or human barriers along this sparsely populated stretch. The likelihood that any international traffic coming from this area would have passed through a previous border checkpoint is small indeed. The Randado checkpoint is situated just beyond the confluence of three roads leading from this uncontrolled border area and seems to be a carefully chosen interior functional equivalent in an area where surveillance of the border itself is well-nigh impossible.[6]

Finally, the district court considered the possible interference with domestic traffic and determined that the sparse population of the towns and the area lying directly south and southwest of Randado resulted in only slight intrusion on northbound domestic traffic.[7]

---

5. See n.4, supra.

6. The checkpoint is located more than 25 miles north of the border so that it also serves as a screen for nonresident aliens with I–186 cards authorizing work within 25 miles of the border who might have strayed further north. The appendix to Chief Justice Burger's concurring opinion in Brignoni-Ponce lists this as a proper consideration for the location of a checkpoint. 422 U.S. at 909–10, 95 S.Ct. 2574.

7. The district court relied on the following population figures:

Furthermore, the interference with domestic traffic resulting from the establishment of the checkpoint at Randado must be considered slight. None of the roads which converge near Randado connect large cities. Traffic from Zapata (population 2,102, 1970 census) to Hebbronville (population 4,079, 1970 census), or vice versa, would ordinarily use Highway 16. Other area cities include Rio Grande City (population 5,676, 1970 census) and Roma-Los Saenz (population 2,154, 1970 census). To this must be added the small towns of Bustamante, Petroleum, Thompsonville, Guerra, Cuevitas, Victoria, San Ygnacio, and Falcon Heights and

The district court's conclusion that the Randado checkpoint is the functional equivalent of the border is affirmed. The Border Patrol is authorized to search for aliens at the border or its functional equivalent without probable cause. 8 U.S.C. § 1357(a)(3). The district court properly denied appellant's motion to suppress, and therefore his conviction is AFFIRMED.

the surrounding ranches. Travel from more populous areas does not ordinarily flow through this area. Considering the sparcity of the population, the establishment of this checkpoint does not too greatly interfere with domestic traffic.