580 P.2d 734
**The STATE of Arizona, Appellee,**

v.

**Miguel B. GUERRERO and Ruben Garcia Figueroa, Appellants.**

**No. 2 CA–CR 1154.**

Court of Appeals of Arizona,
Division 2.

Feb. 17, 1978.
Rehearing Denied March 22, 1978.
Review Denied April 18, 1978.

Bruce E. Babbitt, Atty. Gen. by Philip G. Urry, Asst. Atty. Gen., Tucson, for appellee.

Richard J. Riley, Bisbee, for appellants.

1. The jury had returned guilty verdicts on all three counts of the indictment—possession of marijuana, transportation of marijuana, and possession of marijuana for sale. At the time of sentencing, however, the court granted the state's motion to vacate the jury finding of guilt as to the first two counts "for the purpose of sentencing procedure only."

## OPINION

RICHMOND, Chief Judge.

Appellants seek reversal of their conviction of possession of marijuana for sale and the sentence imposed thereon.[1] They contend on appeal that the trial court erroneously denied their motion to suppress, their motion for a new finding of probable cause, and in admitting into evidence all of the packages of marijuana found in Guerrero's vehicle. They also contend that the state failed in its duty to disclose and, therefore, the trial court should not have permitted the testimony of three law enforcement officers as to certain matters. We find no error and affirm.

## MOTION TO SUPPRESS

The evidence presented at the suppression hearing reflects the following. On January 14, 1977, at approximately 9:00 p. m., appellant Guerrero was driving his car north on state route 90, north of Huachuca City. Appellant Figueroa, a passenger in the car, was asleep in the back seat. Guerrero was a Mexican national legally immigrated into the United States and free to travel anywhere in the country. Figueroa, on the other hand, was a Mexican national residing in Sonora, Mexico, who had a border crossing card for visiting purposes only, i. e., for three days within the area not more than 25 miles from the Arizona-Mexico border.

A "checkpoint" consisting of a vehicle, some orange cones and four signs, had been established by the border patrol on state route 90. It was located more than 25 miles from the border at milepost 302.2 near the junction of highway 90 with highway 82. There was no permanent structure but the checkpoint was always at the same location and the site had been selected as part of a comprehensive system of checkpoints throughout the United States, a system designed to apprehend aliens who had illegally entered the United States.

Border patrol officers had no discretion as to when to set up a roadblock, but merely followed the schedule set up at least five days in advance by a supervisor. Information as to the location of the checkpoint was available to the public, and its physical arrangement was such that a motorist using the highway would be aware of its presence well in advance of reaching it and would not be surprised at being stopped. Maintenance of a permanent building at the location was not feasible and the checkpoint could not be operated continuously because of lack of the requisite manpower. Selection of the site was based on known routes aliens travel, taking into consideration all of the converging roads, and with a view to public safety so that cars could be stopped without the possibility of accidents.

Guerrero was stopped at the checkpoint by a member of the border patrol who identified himself as an immigration officer and asked to check Guerrero's immigration status. The officer by using his flashlight saw another Mexican male, Figueroa, lying on the back seat. Guerrero showed his legal residence status card. When the officer spoke to Figueroa and received no response, the officer directed Guerrero to pull off to a secondary area. He then signaled to another officer to check further. As the second officer approached, Guerrero got out of the vehicle and walked to the back, where he met the officer. Guerrero did not respond when asked in English where he was from, but when asked in Spanish he told the officer he was from Mexico. He handed the officer his immigration status card and at the same time opened the trunk of the car. According to the officer, he had not asked Guerrero to do so nor indicated to him in any way that he should open the trunk. When the trunk was opened, the officer noticed a duffel bag and a blanket or tarp in the back part of the trunk. The duffel bag, which was four and one-half to five feet long, appeared full and the officer pulled it toward him in order to determine whether anyone was in it or behind it. Immediately after he pulled the bag toward him, the officer saw 12 to 14 bricks of marijuana stacked in the rear of the trunk

against the back seat. He identified the bricks as marijuana by the smell.

The officer told Guerrero to sit down and put his hands up and the first officer then walked over and advised him that he was under arrest. Until then, the officer who had discovered the marijuana bricks had not been aware of the passenger in the back seat. Both officers approached the car. When Figueroa did not respond to being told twice in Spanish to get up, one of the officers reached in, shook him on the shoulder, and told him to get out of the car. The officers checked his immigration status and discovered that he did not have a permit which, issued together with a border crossing card, would have entitled him to exceed the 25-mile limit. Figueroa was then arrested and both he and Guerrero were advised in Spanish of their rights. A further search of the interior of the Guerrero vehicle disclosed more marijuana bricks under the back seat.

■ Appellants contend this border patrol checkpoint did not satisfy the criteria set down in United States v. Martinez-Fuerte, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976), and therefore the initial stop and questioning, in the absence of any individualized suspicion, was unlawful. They do not challenge the reasonableness of the location of the checkpoint, and we do not agree that it otherwise failed to satisfy the characteristics of a permanent checkpoint enunciated in Martinez-Fuerte, supra. It had been used for a number of years and was always set up at the same location. The location was public information and the physical arrangement was such that a motorist using the highway would be aware of its presence well in advance of reaching it, hence would not be surprised or startled at being stopped. It was operated under a standardized procedure and was visibly manned by law enforcement officers. The officers had no choice as to the location, which had previously been selected, and the decision whether or not it should be set up at any given time was left to supervisory officials on a planned schedule. Finally, the officers were physically stationed at the

checkpoint during its operation and only stopped vehicles which attempted to pass through.

■ The presence of a permanent structure is not essential to a permanent checkpoint. *United States v. Wilson,* 553 F.2d 896 (5th Cir. 1977). Nor is it necessary that the checkpoint be operated all of the time. *See United States v. Martinez-Fuerte,* supra. (96 S.Ct. 3081, Note 10.) Because the routine stop of appellants occurred at a permanent checkpoint within the meaning of *Martinez-Fuerte,* it was constitutionally permissible.

■ Appellants next contend the examination of the trunk of Guerrero's car was unlawful because of the absence of probable cause. In *United States v. Ortiz,* 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975), the court held that officers may not search private vehicles at a traffic checkpoint removed from the border and its functional equivalents [2] without consent or probable cause.

Here, however, the record reflects Guerrero's consent to the officer looking inside the trunk. The circumstances justified the trial court's conclusion that Guerrero's consent was voluntary. *State v. Ballesteros,* 23 Ariz.App. 211, 531 P.2d 1149 (1975). Discovery of the bricks of marijuana in the trunk of the vehicle justified the subsequent search of the vehicle's interior.

## MOTION FOR REDETERMINATION OF PROBABLE CAUSE

■ Appellants contend that the trial court erred in denying their motion for a new finding of probable cause. They cite no authority in support of their position but merely used a shotgun attack on the evi-

dence presented to the grand jury. The trial court properly denied appellants' motion because it had no power to inquire into the kind of evidence considered by the grand jury. *State v. Rosenblatt,* 112 Ariz. 461, 543 P.2d 773 (1975); *State v. Jacobson,* 22 Ariz.App. 128, 524 P.2d 962 (1974). Nor do we find any conduct on the part of the prosecutor, as in *State v. Good,* 10 Ariz.App. 556, 460 P.2d 662 (1969), which would indicate an attempt improperly to influence the actions of the jury.

### DISCLOSURE

■ Appellants complain that they were taken by surprise by "material additions to the testimony of witnesses", namely the police officers, and the state thus violated its continuing duty to disclose. Defense counsel was furnished with copies of the officers' reports and, as stated in *State v. Wallen,* 114 Ariz. 355, 560 P.2d 1262 (App.1977):

"The criminal discovery rules do not require the state to provide a word-by-word preview to defense counsel of the testimony of the state's witnesses. [Citation omitted]"

114 Ariz. at 361, 560 P.2d at 1268.

### ADMISSION INTO EVIDENCE OF 29 PACKAGES

■ Appellants maintain it was error to admit into evidence all 29 packages found in the car because only seven were sent to the laboratory for analysis. We find no error. All 29 bricks were shaped the same, similarly wrapped, and transported together. These facts coupled with the narcotic character of the seven bricks tested are circumstantial evidence that the other 22

---

**2.** The Fifth Circuit Court of Appeals has construed the term "functional equivalent of the border" to include a permanent checkpoint and has upheld non-probable cause searches. *United States v. Hart,* 525 F.2d 1199 (5th Cir. 1976), cert. den. 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226 [the court's original decision, 506 F.2d 887, had been vacated and remanded for re-examination in the light of *Almeida-Sanchez v. United States,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973)]; *United States v. Wilson,*

supra. In a recent decision, the Fifth Circuit again recognized a permanent checkpoint as the functional equivalent of the border for purposes of an immigration search. *United States v. Alvarez-Gonzales,* 561 F.2d 620 (5th Cir. 1977). The court held that a cursory inspection for alien passengers, limited to cavities large enough to contain a human form and conducted at a permanent checkpoint, did not require probable cause.

bricks were marijuana. *See State v. Cunningham,* 17 Ariz.App. 314, 497 P.2d 821 (1972).

Affirmed.

HOWARD and HATHAWAY, JJ., concur.