**Jaime Javier GUTIERREZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–97–774–CR.**

Court of Appeals of Texas, Corpus Christi.

June 1, 2000.

Jose L. Aliseda, Jr., Beeville, for Appellant.

George P. Morrill, II, Dist. Atty., Beeville, Grant Jones, Corpus Christi, for State.

Before Chief Justice SEERDEN and Justices HINOJOSA and YAÑEZ.

## O P I N I O N

LINDA REYNA YAÑEZ, Justice.

Appellant, Jaime Javier Gutierrez, appeals from the trial court's denial of his motion to suppress evidence he contends the State obtained through unconstitutional means. Appellant was convicted for possession of approximately fifty-two pounds of marihuana. TEX. HEALTH & SAFETY CODE ANN. § 481.121(b)(5) (Vernon Supp.2000). He entered a plea of no contest, pursuant to a plea agreement, after the trial court's denial of his motion to suppress. He was sentenced to five years confinement and fined five thousand dollars. In four points of error, appellant contends the trial court erred in denying his motion because: (1) the initial stop of his vehicle at a border patrol checkpoint was invalid; (2) the arresting border patrol agent lacked authority to make a warrantless arrest or conduct a search and seizure under state law; (3) there was no probable cause to search his vehicle; and (4) any consent to the search by appellant was involuntary. We affirm.

### Background Facts

On February 14, 1997, appellant and a passenger[1] were traveling north on U.S. Highway 59 in Live Oak County when they were stopped at a border patrol checkpoint about twenty miles north of Freer. The checkpoint consisted of traffic cones and signs identifying the location. The signs said, "slow," and "stop ahead." There was no permanent structure at the location, which is approximately eighty-four miles from the border. The location is one of several designated for use in the area by

---

1. The passenger denied knowledge of the drugs found in appellant's vehicle and is not involved in this appeal.

the Chief Patrol Agent. The "Freer Checkpoint," a permanent border patrol facility, is located on U.S. Highway 59 west of Freer about thirty-one miles away. On duty that day were four border patrol agents, including Agent Lauro Vidal, who was questioning drivers at the primary inspection point, and Elias Alvarez, an agent with the Central South Texas Narcotics Task Force, who was assisting Vidal. All northbound vehicles on Highway 59 were stopped. The purpose of the checkpoint was primarily, to check for deportable immigrants, and secondarily, to check for narcotics and other contraband.

Vidal testified appellant's pickup, which was loaded with furniture, approached the checkpoint at a high rate of speed. Vidal questioned appellant about his citizenship status and appellant stated he was a U.S. citizen.[2] During the questioning, Vidal noticed appellant was visibly nervous; his voice was shaking, his throat was throbbing, and his hands and legs were shaking. Vidal testified that based on his eighteen years of experience, he considered appellant's reaction suspicious, and referred the vehicle to secondary inspection.[3] As requested, appellant stepped out of the vehicle and consented to a search of the truck. A border patrol canine trained to detect narcotics was walked around the truck and "alerted" on a spare tire in open view on the back of the truck. An agent boarded the truck and attempted to lift the tire, which was unusually heavy. Appellant admitted the tire contained approximately forty-four pounds of marihuana. The dog also alerted on a small bag in the back of the truck, which was opened and found to contain several bundles of marihuana.

Appellant was formally arrested by the border patrol agents. The agents then telephoned federal DEA authorities, who advised that the case should be turned over to local authorities for prosecution. Appellant was taken into custody by agent Alvarez and was later transported to the county jail.

### Procedural History

Appellant filed a motion to suppress the evidence seized from the search of the vehicle on the ground that it was the fruit of an illegal arrest and search because border patrol agents are not peace officers and have no authority under state law to arrest, conduct searches and seizures, or establish temporary checkpoints. Second, appellant sought to have the evidence suppressed on the ground that his arrest and detention were without probable cause. Third, he argued the evidence should be suppressed because any consent given by appellant was involuntary. Finally, appellant argued the evidence should be suppressed because it was obtained pursuant to an illegal search in that the search was conducted without a warrant or probable cause in violation of the U.S. Constitution, Article 1, Section 9 of the Texas Constitution, and the code of criminal procedure.

Following a hearing, the trial court denied appellant's motion and issued findings of fact and conclusions of law. The court found:

#### I.

After hearing evidence and the argument of counsel the Court makes the following findings of fact:

2. No testimony was presented at the suppression hearing regarding whether appellant was requested to produce, or did produce, documentation of citizenship. Agent Alvarez's written investigation report reflects, however, that "as [appellant] handed his identification to Vidal, [appellant's] hand was shaking as well."

3. Vidal testified he referred appellant to secondary inspection for further questioning because of appellant's nervousness and because of safety considerations:

When I noticed that he was extremely nervous, I asked him to park at the secondary inspection and allow us to proceed a further inspection of the vehicle, based on his actions and also for our safety, because Highway 59 is a two-lane highway. The vehicles come by, and we're searching the vehicle. Somebody might either run over us or run over him.

That the United States Immigration Service can, under the laws of the United States, set up permanent border patrol check stops within 80 aeronautical miles of the United States border with any foreign country.

That the United States Immigration Service set up a permanent border patrol check stop at the intersection of U.S. Hwy 59 and Texas State Hwy. 624, which check stop was manned on a regular basis although not on a daily basis;

That the permanent check stop designated at U.S. Hwy 59 and Texas State Hwy. 624 was within 80 aeronautical miles of the United States border and Mexico and positioned on a main corridor from Mexico into the United States;

That on the 14th day of February, 1997, United States border patrol agents were manning the check stop at U.S. Hwy 59 and Texas State Hwy. 624 stopping all traffic to check for illegal aliens and other illegal contraband transported in violation of the laws of the United States;

That defendant's car was stopped as a matter of course and in the normal routine of exercising the duties of checking for illegal aliens and other illegal contraband being transported in violation of the United States laws;

That based upon defendant's reaction to being stopped, and to the request of officers to see his drivers [*sic*] license, the United States border patrol agents had reasonable suspicion to ask the defendant to pull into a secondary area for further search for illegal aliens or illegal contraband under United States laws;

That United States border patrol agents had reasonable suspicion based on the reactions of the defendant to have their K–9 dog examine the vehicle for illegal aliens or illegal contraband;

That upon indication from the dog that illegal contraband was in the vehicle, the United States border patrol agents had probable cause to search the vehicle and found two packages of marihuana in a plastic sack;

That based upon their discovery of illegal contraband, United States border patrol agents had probable cause to arrest the defendant under the laws of the United States;

That upon contact with the United States Drug Enforcement Agency, that Agency declined to accept the case for prosecution under the laws of the United States and the U.S. border patrol agents turned over the defendant, the contraband, and the defendant's vehicle to Elias Alvarez, a Central South Texas Task Force agent, who was present at the check stop at the time defendant's car was stopped, searched, and defendant arrested under the laws of the United States;

That the check point at U.S. Hwy 59 and Texas State Hwy 624 was not a State of Texas checkpoint but a U.S. Immigration Service Border Patrol checkpoint.

## II.

After hearing evidence and the argument of counsel the court made the following conclusions of law:

1. That Defendant was stopped at a permanent United States border control check point in the normal course of checking for illegal aliens and other contraband;

2. That there was reasonable suspension [*sic*] to search the vehicle under laws of the United States;

3. That there was probably [*sic*] cause to arrest the Defendant under the laws of the United States;

4. That border patrol agents are authorized to release and did release the Defendant and the contraband to Central South Texas Task Force agent Elias Alvarez for arrest and prosecution under the laws of the State of Texas.

THEREFORE, Defendant's Motion to Suppress is Denied.

## Standard of Review

■ The standard for courts of appeals' review of trial courts' rulings on motions to suppress evidence based on Fourth Amendment claims depends upon the type of question presented to the reviewing court. *Loserth v. State,* 963 S.W.2d 770, 772 (Tex.Crim.App.1998); *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim.App.1997); *Loesch v. State,* 979 S.W.2d 47, 50 (Tex.App.—Corpus Christi 1998, no pet.). As the court of criminal appeals explained in *Guzman:*

> [A]s a general rule, the appellate courts, including this Court, should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. The appellate courts, including this Court, should afford the same amount of deference to trial courts' rulings on 'application of law to fact questions,' also known as 'mixed questions of law and fact,' if the ultimate resolution of those questions turns on an evaluation of credibility and demeanor. The appellate courts may review de novo 'mixed questions of law and fact' not falling within this category. This Court may exercise its discretion to review de novo these decisions by the intermediate appellate courts.

*Guzman,* 955 S.W.2d at 89 (citations omitted).

■ The amount of deference a reviewing court affords to a trial court's ruling on a mixed question of law and fact often is determined by which judicial actor is in a better position to decide the issue. *See id.* at 87 (citations omitted). If the issue involves the credibility of a witness, thereby making the evaluation of that witness's demeanor important, compelling reasons exist for allowing the trial court to apply the law to the facts. *See id.* On the other hand, if the issue is whether an officer had probable cause to seize a suspect under the totality of the circumstances, the trial judge is not in an appreciably better position than the reviewing court to make that determination. *See id.* Therefore, although due weight should be given to the inferences drawn by trial judges and law enforcement officers, determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal. *See id.* (citing *Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)); *see also United States v. Hernandez,* 976 F.2d 929, 930 (5th Cir.1992) (determination that a search or seizure did not violate the Fourth Amendment is a question of law reviewed *de novo* ). "[T]he legal rules for probable cause and reasonable suspicion acquire content only through application. Independent review is therefore necessary if appellate courts are to maintain control of, and to clarify the legal principles." *Guzman,* 955 S.W.2d at 87 (quoting *Ornelas,* 517 U.S. at 697, 116 S.Ct. 1657).[4]

■ We review all facts under the totality of the circumstances, working together and not in isolation of each other. *Loesch v. State,* 958 S.W.2d 830, 832 (Tex. Crim.App.1997) (citing *Guzman,* 955 S.W.2d at 89). Although we conduct a deferential review of historical facts, we need not assign the same weight or significance to such facts as the trial court in deciding the ultimate issues before us. *Loserth,* 963 S.W.2d at 774.

---

**4.** The majority in *Ornelas* said *de novo* review is appropriate for federal constitutional claims under the Fourth Amendment for three reasons: (1) sweeping deference would allow varied results under similar facts, inconsistent with a unitary system of law; (2) where legal concepts such as probable cause and reasonable suspicion acquire content only through application, independent review is necessary to maintain control of and clarify legal principles; and (3) *de novo* review unifies precedent so as to provide defined set of rules to law enforcement.

*Loserth v. State,* 963 S.W.2d 770, 774 n. 2 (Tex.Crim.App.1998) (discussing *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)).

## Legality of the Stop

In his first point of error, appellant argues the trial court erred in overruling his motion to suppress evidence because the initial stop of his vehicle violated the Fourth Amendment of the United States Constitution, Article 1, Section 9 of the Texas Constitution, and chapter 14 of the Texas Code of Criminal Procedure. Appellant challenges the validity of the stop on the grounds that (1) the checkpoint was a "temporary" (rather than "permanent") checkpoint, at which the border patrol lacked authority to conduct a "border search," and (2) the checkpoint constituted an "unconstitutional roadblock" unauthorized by state law.

■ When analyzing and interpreting Article 1, Section 9 of the Texas Constitution, we are not bound by United States Supreme Court decisions that address the Fourth Amendment. *Hulit v. State*, 982 S.W.2d 431, 436 (Tex.Crim.App.1998); *Heitman v. State*, 815 S.W.2d 681, 690 (Tex.Crim.App.1991); *Trevino v. State*, 875 S.W.2d 373, 375 (Tex.App.—Corpus Christi 1994, no pet.). The decisions of the United States Supreme Court represent the minimum protection that Texas must afford its citizens. *Heitman*, 815 S.W.2d at 690. The federal constitution sets the floor for individual rights; state constitutions establish the ceiling. *Id.*

■ Article 1, Section 9 of the Texas Constitution does not offer greater protection to the individual than the Fourth Amendment to the United States Constitution, and it may offer less protection. *Hulit*, 982 S.W.2d at 436.

In this appeal, we may deem the federal and state constitutional protections identical, because appellant's brief does not separately argue whether there are any differences in his protections against unreasonable search and seizure under the federal and state constitutions. *See Narvaiz v. State*, 840 S.W.2d 415, 432 (Tex.Crim.App.1992); *Hypolite v. State*, 985 S.W.2d 181, 185 (Tex.App.—San Antonio 1998, no pet.).

■ Border patrol agents may briefly detain motorists at permanent immigration checkpoints to question them about their citizenship. *United States v. Martinez–Fuerte*, 428 U.S. 543, 556–62, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976); *United States v. Gonzalez–Basulto*, 898 F.2d 1011, 1012 (5th Cir.1990). As the Supreme Court explained in *Martinez–Fuerte*,

> The Border Patrol conducts three kinds of inland traffic-checking operations in an effort to minimize illegal immigration. Permanent checkpoints, such as those at San Clemente and Sarita, are maintained at or near intersections of important roads leading away from the border. They operate on a coordinated basis designed to avoid circumvention by smugglers and others who transport the illegal aliens. Temporary checkpoints, *which operate like permanent ones,* occasionally are established in other strategic locations.

*Martinez–Fuerte*, 428 U.S. at 552, 96 S.Ct. 3074 (emphasis added).

■ Appellant challenges the trial court's finding that the checkpoint was a "permanent border patrol check stop ... which check stop was manned on a regular basis although not on a daily basis." The State contends the checkpoint was "a temporary checkpoint, operated like a permanent one, that is occasionally established at strategic locations." Appellant contends there is no evidence to support the conclusion that the checkpoint was permanent and further contends the holding in *Martinez–Fuerte* is expressly limited to permanent checkpoints.[5]

---

5. Appellant also contends there is no evidence to support a conclusion that the checkpoint qualifies as the functional equivalent of the border. The State does not contend, and the trial court did not find, that the search was justified as a "border search" or as a search at a site which qualifies as the functional equivalent of the border. Accordingly, we will not address this aspect of appellant's argument.

The evidence shows the checkpoint consisted of traffic cones and several warning signs. There was no permanent structure at the location. Agent Vidal denied the checkpoint was temporary:

> Well, I don't —— wouldn't call it temporary because all our checkpoints are just checkpoints. There are no temporary checkpoints anymore. They're all considered as checkpoints.

Vidal testified the checkpoint was set up by the border patrol and that the location was a "routine inspection spot," one of several checkpoint locations designated by the Chief Patrol Agent for use in the area. All northbound vehicles were stopped for questioning, a procedure "follow[ed] on every checkpoint." There was no evidence indicating the agents in the field participated in choosing the location of the checkpoint or the procedures to be followed. After reviewing the record, we cannot say the trial court abused its discretion in finding the checkpoint was "permanent ... manned on a regular basis. "

In *Martinez–Fuerte*, the Supreme Court upheld the use of fixed checkpoints to stop vehicles and question the occupants about their citizenship, even absent any individualized suspicion that the vehicles contain illegal aliens. *Martinez–Fuerte*, 428 U.S. at 562, 96 S.Ct. 3074. In support of his argument that *Martinez–Fuerte* is inapplicable to the present case, appellant points to a footnote in the opinion, in which the court limited its holding to "permanent checkpoints." *Id.* at 566 n. 19, 96 S.Ct.

3074. At the outset of the opinion in *Martinez–Fuerte*, however, the court characterized the issue before it as "whether a vehicle may be stopped ·at a *fixed* checkpoint for brief questioning of its occupants even though there is no reason to believe the particular vehicle contains illegal aliens." *Id.* at 545, 96 S.Ct. 3074 (emphasis added). Similarly, the court held that such stops and questioning "may be made in the absence of any individualized suspicion *"at reasonably located checkpoints."* *Id.* at 562, 96 S.Ct. 3074 (emphasis added). The limitation in footnote 19, moreover, appears in the context of distinguishing the holding in *Martinez–Fuerte* from previous cases "requiring probable cause for· any vehicle search in the interior and reasonable suspicion for inquiry stops by roving patrols." *Id.* at 566 n. 19, 96 S.Ct. 3074 (referencing, *e.g., United States v. Ortiz*, 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975) (holding that officers may not search private vehicles without consent or probable cause at traffic checkpoints which are removed from the border and its functional equivalents); *United States v. Brignoni–Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975)(holding a roving border patrol stop permissible only if officer aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that a vehicle contains illegal aliens)).[6]

We hold the checkpoint in the present case is a fixed checkpoint governed by the holding in *Martinez–Fuerte*. Accordingly,

---

**6.** *See also United States v. Payan*, 905 F.2d 1376 (10th Cir.1990) (a "temporary checkpoint," operated only "whenever manpower resources and weather conditions permitted," permissible under *Martinez–Fuerte;* because of "the presumption of regularity that attaches to discretionary agency decisionmaking," defendant has burden of showing checkpoint location unreasonable); *United States v. Hernandez*, 739 F.2d 484 (9th Cir. 1984) (for *Martinez–Fuerte* to apply, checkpoint need not operate all the time or be at a permanent structure; important factor is lack of discretion when operated); *United States v. Vasquez–Guerrero*, 554 F.2d 917 (9th Cir. 1977) (checkpoint was reasonably located, as

it· was at a place which prevents easy circumvention of other checkpoints); *State v. Guerrero*, 119 Ariz. 273, 580 P.2d 734 (1978) (permanent checkpoint does not require permanent structure or round-the-clock operation; was sufficient that location used for several years, approaching motorists were aware of its presence, checkpoint was operated by standardized procedures, and was visibly manned by law enforcement officers). *But see United States v. Maxwell*, 565 F.2d 596, 597 (9th Cir.1977) (long-continued intermittent use of temporary checkpoint does not render it a permanent checkpoint for purpose of treating stop as one justified by *Martinez–Fuerte* ).

we hold that the initial stop of appellant's vehicle did not violate his constitutional rights.

■ We next address appellant's argument that the stop was unlawful because it constituted an "unconstitutional roadblock" unauthorized under state law. Appellant points to Agent Vidal's testimony that he did not know if the border patrol had authority from the State of Texas to set up the checkpoint. Appellant also contends the checkpoint fails to meet the balancing tests to determine the constitutionality of roadblock checkpoints applicable in Texas under *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990),[7] and *Webb v. State*, 739 S.W.2d 802 (Tex.Crim.App.1987).[8] The State responds that the trial court found the checkpoint "was not a State of Texas checkpoint but a U.S. Immigration Service Border Patrol checkpoint." The evidence shows uncontroverted testimony by agents Vidal and Alvarez that the checkpoint was established by the United States Border Patrol.

Border patrol checkpoint operations are conducted pursuant to statutory authorizations empowering border patrol agents to interrogate those believed to be aliens as to their right to be in the United States. 8 U.S.C. § 1357(a)(1) (2000).

We hold the trial court did not abuse its discretion in finding the checkpoint was a border patrol checkpoint. We overrule appellant's first point.

### Authority of Agent

■ In his second point of error, appellant contends that under article 2.122(a)(3) of the Texas Code of Criminal Procedure, as it existed at the time of appellant's arrest, border patrol agents were specifically excluded from a list of federal agents who were given "powers of arrest, search and seizure as to felony offenses only under the laws of the State of Texas." The applicable version of article 2.122(a) provided, in pertinent part:

(a) The following named criminal investigators of the United States shall not be deemed peace officers, but shall have the powers of arrest, search and seizure as to felony offenses only under the laws of the State of Texas:

. . . .

(3) Special Agents of United States Customs, excluding border patrolmen and custom inspectors;

. . . .

---

7. In *Sitz*, the United States Supreme Court applied the balancing test set forth in *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), to determine the constitutionality of a sobriety checkpoint program established by a state police department. *Brown* held a "suspicionless search," (*i.e.*, a search, like a roadblock search, conducted in the absence of a warrant and without probable cause or reasonable suspicion) is reasonable under the Fourth Amendment when it has met the following balancing test: the public interest must be balanced against the individual's right to personal security in light of three factors: (1) the state interest involved, (2) the level of intrusion on the individual's privacy, and (3) effectiveness of the procedure used in achieving its stated goal. *See id.* at 50–51, 99 S.Ct. 2637; *see also State v. Sanchez*, 856 S.W.2d 166, 168 (Tex.Crim.App. 1993) (explaining and applying *Sitz* in holding roadblock for questioning driver's licenses and insurance unreasonable search and seizure where it was established by four individ- ual Department of Public Safety officers, officers did not follow standardized guidelines in operating roadblock, officers acted without authorization or guidance of superior officer and without established procedure regarding location of roadblock or its operation, and state offered no evidence demonstrating effectiveness of roadblock in identifying violators).

8. In *Webb*, the Texas Court of Criminal Appeals utilized the *Brown v. Texas* balancing test for suspicionless seizures, weighing the public interest against the intrusion imposed on the individual in light of: (1) the need or interest of the state, (2) the discretion given to the officers, and (3) the intrusion, subjective and objective, upon the individual. The court held a "combination" driver's license check and sobriety roadblock operation was an unreasonable seizure where the operation lacked proper constitutional safeguards and operational guidelines. *Webb v. State*, 739 S.W.2d 802, 812 (Tex.Crim.App.1987).

Tex.Code Crim. Proc. Ann. art. 2.122(a)(3) (Vernon Supp.1996) (amended 1997, 1999) (current version at Tex.Code Crim. Proc. Ann. art. 2.122(a)(3) (Vernon Supp.2000).[9]

We interpret appellant's argument to be that the language in article 2.122(a)(3), prior to its amendment in 1997, indicates that Agent Vidal acted outside the bounds of his authority in arresting appellant. We disagree.

Appellant's reliance on article 2.122(a) is misplaced. The statute cited by appellant addresses the authority granted to federal actors to make arrests under *state* laws. Appellant was arrested pursuant to authority granted to border patrol agents under federal statutes. In support of his argument, appellant cites two cases, *Luera v. State*, 561 S.W.2d 497, 500 n. 2 (Tex. Crim.App.1978), and *Sanchez v. State*, 582 S.W.2d 813 (Tex.Crim.App.1979). Both cases are inapplicable to the present circumstances. In *Sanchez*, the court found no constitutional violation where two border patrol agents detained a driver they believed to be intoxicated when they encountered him stopped on the highway. *Sanchez*, 582 S.W.2d at 814. The footnote cited by appellant in *Luera* merely notes that border patrol agents have no jurisdiction to stop traffic offenders (for violations of state law) on state highways. *Luera*, 561 S.W.2d at 500 n. 2. We reject appellant's argument and hold his arrest by Agent Vidal was not barred by article 2.122(a).

Appellant also argues that although article 2.122(a) authorized "Special Agents of United States Customs" to make arrests under state laws, "customs inspectors" have no such authority, and the record is inadequate to establish Vidal is a customs agent. We have already held appellant's argument regarding the applicability of article 2.122(a) to be without merit.

Moreover, border patrol agents have been designated by the Bureau of Customs as customs agents. *See United States v. Thompson*, 475 F.2d 1359, 1362–63 (5th Cir.1973) (citing Customs Delegation Order No. 42, 36 Fed.Reg. 13410 (T.D. 71–181, 1971).[10] " 'It appears that Border Patrol agents wear two hats, one as an immigration officer and the other as a customs officer.' " *Id.* at 1363 (quoting *United States v. McDaniel*, 463 F.2d 129, 134 (5th Cir.1972)); *see also United States v. Muniz–Melchor*, 894 F.2d 1430, 1437 (5th Cir. 1990) (border patrol agents at temporary checkpoint authorized to enforce laws regarding controlled substances in Title 21 of U.S.Code).

■ Evidence obtained by federal officers acting lawfully and in conformity to federal authority is admissible in state criminal proceedings. *State v. Toone*, 823 S.W.2d 744, 748 (Tex.App.—Dallas, 1992), *aff'd on other grounds*, 872 S.W.2d 750 (Tex.Crim.App.1994) (discussing "reverse silver-platter doctrine"). We hold the trial court did not err in concluding that border patrol agents are authorized to release appellant and the evidence seized to state authorities for prosecution. We overrule appellant's second point of error.

### Probable Cause to Search

In his third point of error, appellant contends the trial court erred in denying his motion to suppress because there was no probable cause to search his vehicle.

**9.** The current version of Article 2.122(a) provides, in pertinent part:
. . . .
(3) Special Agents of the United States Customs Service;
. . . .
(10) Special Agents of the United States Immigration and Naturalization Service;
. . .
Thus, border patrolmen are now expressly *included* in the list of federal investigators authorized to conduct arrests, searches and seizures as to felony offenses only under state law. Tex.Code Crim. Proc. art. 2.122(a)(3),(10) (Vernon Supp.2000).

**10.** Agent Vidal testified he was "cross-designated with U.S. Customs and with DEA" and was "allowed to enforce Federal laws that pertain to Title 21, interdiction of narcotics."

Appellant focuses on Agent Vidal's testimony that he referred appellant to secondary inspection because of appellant's "visible nervousness" and argues that nervousness is insufficient to constitute probable cause to search appellant's vehicle.

Border patrol agents may stop motorists, question them about their citizenship, and selectively refer them to a secondary inspection area without any individualized suspicion. *Martinez–Fuerte*, 428 U.S. at 566, 96 S.Ct. 3074; *Hernandez*, 976 F.2d at 930; *United States v. Gonzalez–Basulto*, 898 F.2d 1011, 1012 (5th Cir. 1990); *United States v. Dovali–Avila*, 895 F.2d 206, 207 (5th Cir.1990).

Border patrol agents may not, however, conduct a warrantless search of the referred vehicle without consent or probable cause. *Hernandez*, 976 F.2d at 930 (citing *Dovali–Avila*, 895 F.2d at 207). "A canine 'sniff' of the exterior of a car does not constitute a search within the fourth amendment." *Id.; Gonzalez–Basulto*, 898 F.2d at 1013. When a dog, which has been trained to detect concealed contraband or hidden people, alerts in the near presence of a particular vehicle, that action is sufficient to give rise to probable cause to search that vehicle. *Hernandez*, 976 F.2d at 930; *Dovali–Avila*, 895 F.2d at 207; *Gonzalez–Basulto*, 898 F.2d at 1013.

In the present case, Agent Vidal properly referred appellant's vehicle to secondary inspection and conducted a canine "sniff." No particularized suspicion was needed for such action. Once the dog alerted on the back of the truck, Agent Vidal had probable cause to search the truck and legally discovered the marihuana. We overrule appellant's third point of error.

### Consent

In his fourth point of error, appellant contends that any consent granted by him to search the vehicle was involuntary. "Consent and probable cause are alternative grounds justifying warrantless vehicle searches. If either ground existed prior to the search, the search was valid and proof of the other ground is not required." *Muniz–Melchor*, 894 F.2d at 1437 (quoting *United States v. Sutton*, 850 F.2d 1083, 1085 (5th Cir.1988)). Based on our determination that there was probable cause to search appellant's vehicle, we need not address appellant's fourth point. TEX.R.APP. P. 47.1.

The judgment of the trial court is AFFIRMED.