COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS





MOSES PONCE,


 Appellant,


v.


THE STATE OF TEXAS,



 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 



No. 08-06-00232-CR




Appeal from the



120th District Court



of El Paso County, Texas



(TC# 20050D01237)



O P I N I O N


 This is an appeal from a conviction for the offense of murder. Appellant pleaded guilty to
the jury, and the jury assessed punishment at life imprisonment. We affirm.

I. SUMMARY OF THE EVIDENCE


 Prior to trial, Appellant filed a motion to suppress the evidence in the case. At the hearing
on the motion to suppress the evidence, Appellant testified that he had left El Paso in the early
morning of Sunday, February 13, 2005, in a car he had rented at the El Paso Airport. It was his
intention to go to California, but he was first going to stop in Albuquerque, New Mexico. He
stopped at the Border Patrol checkpoint north of Las Cruces, New Mexico. He was asked for his
identification, but he had difficulty finding it. He opened his trunk, and he exited the vehicle. The
officers smelled alcohol and told him to wait inside his vehicle. His vehicle was moved, and a
member of the Sheriff's Office had Appellant perform some sobriety tests. He was arrested for DWI. 
Appellant testified that he did not give anyone permission to search his vehicle. Appellant stated that
there was a 9mm Glock semi-automatic pistol under the passenger's seat.

 Jose Meza testified that he was a U.S. Border Patrol agent stationed in Las Cruces. He
worked at the Border Patrol checkpoint on Interstate 25, at mile marker 26. On February 13, 2005,
Appellant came through the checkpoint at about 5:20 a.m. Appellant's eyes were bloodshot, his
speech was slurred and unclear, and he was not coherent. Agent Meza stated that he thought he
smelled alcohol coming from the vehicle. When the agent asked him whether he had any luggage,
Appellant opened the trunk from inside the vehicle without being asked to do so. Appellant stated
that he was going to California, but Agent Meza knew that I-25 does not go to California. (1) As he
went to the rear of Appellant's vehicle, Appellant opened his door and stepped out. At that time,
Agent Meza, using his flashlight, noticed a handgun on the passenger side floorboard. Two other
Border Patrol agents put Appellant into a waiting room that was used for processing. The room was
locked. Agent Meza indicated that Appellant was not free to leave at that time.

 Agent Meza then drove Appellant's vehicle over to a secondary inspection area. On the
floorboard, he saw a gun, ammunition, and an open case of beer. The agent stated that he did not
feel that it was safe for Appellant--or for anyone around him--for Appellant to keep driving. He
thought Appellant was too intoxicated for his own good and for the good of others, given his
condition and the existence of the gun. Agent Meza communicated with his supervisor, who told
him to call the Sheriff's Department. As the agent waited for the Sheriff's Deputy to arrive, he
conducted a canine inspection of the outside of the vehicle, and the dog alerted to the inside of the
vehicle. The dog was trained to alert to narcotics and concealed humans. Nothing of that nature was
found, but some spent shell casings were observed on the driver's side of the vehicle. Appellant, his
vehicle, and its contents were turned over to the Sheriff's Deputy when he arrived.

 Jesse España testified that he was a deputy sheriff for Doña Ana County, New Mexico. 
Deputy España stated that he was dispatched to the checkpoint north of Las Cruces on February 13,
2005. He arrived there at approximately 6 a.m. He met with Appellant inside the Border Patrol
waiting room. Deputy España spoke to Appellant, who stated that he was going to California, but
was stopping first in Albuquerque. In response to a query as to alcohol consumption, Appellant
stated that he had had some alcoholic beverages several hours earlier. Deputy España stated that
Appellant's eyes were watery and bloodshot, his speech was slurred, and he smelled of alcohol. 
Appellant agreed to the administration of field-sobriety tests. However, after Appellant failed the
initial test, he told Deputy España that he was not going to perform any more tests. The Deputy then
placed Appellant under arrest.

 Deputy España testified that it was the policy of the county to tow the vehicles of individuals
arrested for DWI. When the Deputy found out that the vehicle was rented, he asked Appellant what
he wanted to do with his property. Appellant told him he wanted to take all the property with him. 
If Appellant had owned the vehicle, the property would have stayed with the vehicle. Deputy España
agreed to collect the property for him, and he gathered up, among other items, the pistol, the 12-pack
of beer, three expended shells, various items of clothing, as well a camcorder and a camera. España
transported Appellant to Las Cruces. (2) During the drive, Appellant told the Deputy that he did not
want anyone looking at his video recordings in violation of his privacy. He also stated that the shell
casings in the vehicle were there because he had been shooting the gun at a range from inside the
vehicle. He stated that he was in the Army and he was on leave to take care of a paternity test. 
When they arrived at Las Cruces, Deputy España was told that an investigator from the El Paso
Police Department wanted to confer with him. Two detectives arrived, and he showed them where
Appellant's property was stored.

 John Ordoñez testified that he was an investigator with the Doña Ana County Sheriff's
Department. He met with detectives from the El Paso Police Department. After a trip to El Paso,
a murder arrest warrant was obtained, and the New Mexico authorities filed a fugitive-from-justice
warrant on Appellant. On February 14, 2005, Investigator Ordoñez obtained a search warrant for
Appellant's property and the vehicle. The warrant was executed. The court denied the motion to
suppress.

 At the beginning of trial, Appellant entered a plea of guilty to murder. He stipulated to a
summary of the evidence, stated by the prosecutor, indicating that on February 13, 2005, he shot
James Celaya with a firearm, causing his death. The court admonished Appellant and then accepted
his plea of guilty.

 The State then presented its case-in-chief. On February 12, 2005, the day prior to the offense,
Appellant had purchased a 9mm Glock pistol and some ammunition from the Fort Bliss Rod and
Gun Club in El Paso. Testimony indicated that the offense occurred at the intersection of Broaddus
and Dyer Streets, near a restaurant. Bullet fragments and shell casings were collected at the scene,
and there was testimony that the shell casings were consistent with having been fired from a 9mm
Glock pistol. An autopsy was conducted and the results of that autopsy indicated that the victim had
been shot ten times. Several of those shots were fatal. There was testimony from the victim's
brother, indicating that another relative had called him and stated that Appellant had shot the victim. 
 Appellant testified at trial. He stated that he was a staff sergeant in the Army and that he had
a drinking problem, due to his service in the first Gulf War. Appellant had been stationed in Korea
when he got leave, and he came to El Paso. His girlfriend, Julie Gonzalez, picked him up at the
airport. He called his cousin, the deceased, to come to her apartment to visit. Later, he went to the
Fort Bliss Rod and Gun Club and bought the Glock pistol and some ammunition. That evening,
Appellant had planned to go clubbing with the deceased and Gonzalez. It ended up, however, that
only Appellant and the deceased went clubbing. The two drank a lot during the course of the
evening. At the end of the evening, while driving to a friend's house, Appellant told the deceased
that he intended to ask Gonzalez to marry him. The deceased responded, "You don't want to marry
a girl like that." The deceased then told Appellant that, while he had been away, he had had sexual
relations with Gonzalez. Appellant stopped the car and told the deceased to get out. Appellant
pulled the Glock pistol on the deceased and again told him to get out of the car. The deceased did
so and made a phone call. He taunted Appellant and made a derogatory comment about Gonzalez. 
Appellant stated that he "lost it" and started firing the pistol. Appellant realized he shot the
deceased, and he left the scene and went to the home of the deceased's brother. There, Appellant
got his video camera and several bottles of Korean liquor. He made a video about what had
occurred, and he then drove until he reached the checkpoint near Las Cruces.


II. DISCUSSION


 In five issues, Appellant asserts that the evidence seized from his vehicle was illegally
obtained. Specifically, Appellant contends that he did not consent to the search, the canine search
was invalid, the allowable scope and duration of an immigration checkpoint stop was illegally
broadened, there was no probable cause for his arrest, and there was no exception to the warrant
requirement pursuant to the plain view or inventory search doctrines.

 Initially, we will address the State's contention that Appellant has not preserved error
asserted in his motion to suppress the evidence, because, in entering an open plea of guilty to the
jury, he waived all error that might exist in the denial of the pretrial motion to suppress. The State
relies on Simpson v. State, 67 S.W.3d 327 (Tex. App.--Texarkana 2001, no pet.), in support of its
argument. In Simpson, the court determined that he had waived his suppression issue, because the
record showed that his guilty plea was not contingent upon his right to appeal the trial court's ruling. 
Id. at 330. However, in the present case, the record shows that Appellant's pleas were contingent
on appealing the suppression issue. Specifically, the record shows that the trial court conducted a
hearing on Appellant's motions to suppress. The trial court then proceeded to admonish him and
stated that, "If you pursue--persist in your plea of guilt, and I accept your plea of guilt, you may not
appeal except on matters raised by written motions and ruled on prior to trial or by permission of this
Court." Under these circumstances, we cannot conclude that Appellant waived his right to challenge
the suppression issue on appeal. (3)

 We review a trial court's ruling on a motion to suppress evidence under an abuse of
discretion standard. See Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). At a
suppression hearing, the trial court is the sole fact finder and may choose to believe or disbelieve any
or all of the witnesses' testimony. Alvarado v. State, 853 S.W.2d 17, 23 (Tex. Crim. App. 1993). 
We give almost total deference to the trial court's determination of historical facts when supported
by the record, particularly if the findings turn on witness credibility and demeanor. State v. Ross,
32 S.W.3d 853, 856 (Tex. Crim. App. 2000); Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim.
App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The same deference is
accorded to determinations of mixed questions of law and fact, if their resolution depends upon
witness credibility and demeanor. Ross, 32 S.W.3d at 856. Mixed questions of law and fact that do
not turn on an evaluation of credibility and demeanor are considered under a de novo standard. Id. 
We will sustain the trial court's ruling, if it is reasonably supported by the record and is correct on
any theory of law applicable to the case. Villarreal, 935 S.W.2d at 138.

 The United States Supreme Court has upheld the constitutionality of permanent immigration
checkpoints, where travelers are briefly subjected to questioning about their immigration status,
without any individualized suspicion of wrongdoing. See United States v. Martinez-Fuerte, 428 U.S.
543, 556-62, 96 S. Ct. 3074, 3082-85 (1976). This detention must be brief, in order to allow
questioning concerning citizenship, and vehicles can selectively be referred to secondary inspection
areas, without any individualized suspicion of wrongdoing. Gutierrez v. State, 22 S.W.3d 75, 81
(Tex. App.--Corpus Christi 2000, no pet.). Border Patrol agents cannot conduct a warrantless search
of a vehicle so directed, without consent or probable cause. However, if a canine alerts on the
exterior of a vehicle, this does not constitute a search under the Fourth Amendment. Id. at 85.

 Furthermore, if a driver who is legitimately stopped at a location such as a permanent Border
Patrol checkpoint exhibits signs of intoxication, that individual may be detained by Border Patrol
agents, until such time as he can be turned over to a peace officer of the jurisdiction where he was
stopped. See Sanchez v. State, 582 S.W.2d 813, 814-15 (Tex. Crim. App. 1979). The Code of
Criminal Procedure provides that "A peace officer or any other person, may, without a warrant, arrest
an offender when the offense is committed in his presence or within his view, if the offense is one
classed as a felony or as an offense against the public peace." Tex. Code Crim. Proc. Ann. art.
14.01(a). Public intoxication and driving while intoxicated are both breaches of the peace. Kunkel
v. State, 46 S.W.3d 328, 331-32 (Tex. App.--Houston [14th Dist.] 2001, pet. ref'd). Probable cause
exists when the arresting officer has a reasonable belief, based on the facts and circumstances within
the officer's knowledge, that an offense has been or will be committed. Torres v. State, 182 S.W.3d
899, 901-02 (Tex. Crim. App. 2005). Law enforcement officers may search the passenger
compartment of a vehicle as a search incident to an arrest. State v. Ballard, 987 S.W.2d 889, 892
(Tex. Crim. App. 1999). This is so, regardless of whether the arrest occurs immediately before or
after the search, as long as sufficient probable cause exists for the officer to arrest before the search. 
Id. In the present case, Agent Meza testified that Appellant exhibited signs of intoxication and that
he was incoherent. We find that there was probable cause to arrest Appellant for public intoxication
and DWI. Accordingly, the searches of the vehicle at the checkpoint and at the secondary location
were valid as searches incident to an arrest. The court did not err in denying Appellant's motion to
suppress. Issues One through Five are overruled.


III. CONCLUSION


 We affirm the judgment of the trial court.


 KENNETH R. CARR, Justice


January 17, 2008


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)

1. In the U.S. Interstate Highway System, highways with numbers ending in "0" run generally west to east;
highways with numbers ending in "5 " run generally south to north. I-25 runs north from Las Cruces, until it terminates
at I-90 in northern Wyoming. I-25 never comes anywhere near California. One using the Interstate Highway System
to travel from Las Cruces (or El Paso) to California would presumably use I-20, which goes west from Las Cruces.
2. Las Cruces is the county seat of Doña Ana County, New Mexico.
3. The State also maintains that Appellant has failed to preserve error on most of the evidence seized from his
vehicle, because he stated that he had "no objection" when the evidence was offered. Further, the State contends that
any error in the admission of the videotape was waived by Appellant's introducing the entirety of the tape into evidence. 
However, for reasons discussed below, we hold that the trial court did not err by denying Appellant's motions to
suppress, and we therefore do not address whether he waived this issue. See Tex. R. App. P. 47.1.