ACCEPTED
06-14-00207-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
6/15/2015 11:41:04 AM
DEBBIE AUTREY
CLERK

No. 06-14-00207-CR

IN THE COURT OF APPEALS

FOR THE

SIXTH JUDICIAL DISTRICT OF TEXAS

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
6/15/2015 11:41:04 AM
DEBBIE AUTREY
Clerk

KARL PATRICK HOULDITCH,

Appellant

V

THE STATE OF TEXAS

Appellee

APPEALED FROM THE 71st DISTRICT COURT

HARRISON COUNTY, TEXAS

TRIAL COURT CAUSE #13-0263X

BRIEF OF STATE

COKE SOLOMON
CRIMINAL DISTRICT ATTORNEY
HARRISON COUNTY, TEXAS
P.O. BOX 776
MARSHALL, TEXAS 75671
(903) 935-8408

BY:   SHAWN ERIC CONNALLY
ASSISTANT CRIMINAL DISTRICT ATTORNEY
BAR #24051899
ATTORNEY FOR THE STATE

APPELLEE DOES NOT REQUEST ORAL ARUGMENT

i

No. 06-14-00207-CR

KARL PATRICK HOULDITCH
Appellant

V

THE STATE OF TEXAS
Appellee

_____

**NAMES OF ALL PARTIES AND ATTORNEYS**
_____

The names and identifying information of all parties and attorneys were correctly stated in Appellant's brief.

# TABLE OF CONTENTS

NAMES OF ALL PARTIES AND ATTORNEYS ................................................. ii

INDEX OF AUTHORITIES .................................................................... iv-vii

PRELIMINARY STATEMENT OF THE NATURE OF THE CASE .................... 1

    STATE'S REPLY ISSUE ONE: ……………………….……1

    STATE'S REPLY ISSUE TWO……………………….…..1

    STATE'S REPLY ISSUE THREE……………………………2

    STATE'S REPLY ISSUE FOUR……………………………..3

STATEMENT OF THE FACTS ...................................................................3

ARGUMENTS AND AUTHORITIES ...........................................................9

    SUMMARY OF THE ARGUMENT REPLY ISSUE ONE..........................9

        ARGUMENTS AND AUTHORITIES REPLY ISSUE ONE............10

    SUMMARY OF THE ARGUMENT REPLY ISSUE TWO…………...…18

        ARGUMENTS AND AUTHORITIES REPLY ISSUE TWO……...19

    SUMMARY OF THE ARGUMENT REPLY ISSUE THREE ………...…27

        ARGUMENTS AND AUTHORITY REPLY ISSUE THREE…....…27

    SUMMARY OF THE ARGUMENT REPLY ISSUE FOUR…………….30

        ARUGMENTS AND AUTHORITIES REPLY ISSUE FOUR……30

PRAYER ...............................................................................................38

CERTIFICATE OF SERVICE ...................................................................38

**INDEX OF AUTHORITIES**

**CASES:**

*Amador v. State*, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007) ……………….…10

*Hankins v. State*, 132 S.W.3d 380, 388 (Tex.Crim.App. 2004) ………………….10

*Swearingen v. State*, 143 S.W.3d 808, 810-11 (Tex.Crim.App. 2004) ………...…10

*State v. McLain*, 337 S.W.3d 268, 271 (Tex.Crim.App. 2011) ……………..…10

*Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex.Crim.App. 2007)……………...…11

*Illinois v. Gates*, 462 U.S. 213, 234-37, 103 S.Ct. 2317, 76 L.Ed.2d 527(1983)…11

*Eisenhauer v. State*, 754 S.W.2d 159, 164 (Tex.Crim.App. 1988)………..……12

*State v. Martin*, 833 S.W.2d 129, 132 (Tex.Crim.App. 1992)……………………12

*Johnson v. State*, 864 S.W.2d 708, 717-719 (Tex.App.-Dallas 1993, affirmed)….12

*Murray v. State*, 864 S.W.2d 111, 115 (Tex.App.-Texarkana 1993, pet. ref'd)…..12

*Kennedy v. State*, 338 S.W.3d 84, 93 (Tex.App.-Austin, no pet.)………………...14

*Ellis v. State*, 722 S.W.2d 192, 196-97 (Tex.App.-Dallas 1986, no pet.)…………14

*United States v. Freeman*, 685 F.2d 942 (5th Cir. 1982)……………………………..14

*Bernard v. State*, 807 S.W.2d 359, 365 (Tex.App.-Houston [14th Dist.] 1991, no pet.)……………………………………………………………………..……14

*United States v. Johnson*, 461 F.2d 285, 287 (10th Cir.1972)……………………..14

*Crider v. State*, 352 S.W.3d 704, 707 (Tex.Crim.App. 2011)……………………14

*State v. Cotter*, 360 S.W.3d 647 (Tex.App.-Amarillo, 2012 no pet.)……………..15

*McKissick v. State*, 209 S.W.3d 205, 215 (Tex.App.-Houston [1ˢᵗ Dist.] 2006, pet. ref'd)…………………………………………………………..……..15

*Gutierrez v. State*, 22 S.W.3d 75, 84 (Tex.App.-Corpus Christi 2000, no pet.)..…20

*State v. Toone*, 823 S.W.2d 744, 748 (Tex.App.-Dallas 1992), aff'd on other grounds, 872 S.W.2d 750 (Tex.Crim.App. 1994)………………………….…20

*State v. Mollica*, 114 N.J. 329, 554 A.2d 1315, 1325 (1989)……………………..20

*Lockett v. State*, 879 S.W.2d 184, 190 (Tex.App.-Houston [14th Dist] 1994, pet. ref'd)………………………………………………………………………...…21

*People of Territory of Guam v. Villacrusis*, 992 F.2d 886, 887 (9ᵗʰ Cir. 1993)…..22

*United States v. Alfonso*, 759 F.2d 728, 735 (9ᵗʰ Cir. 1985)……………………...22

*Pena v. State*, 61 S.W.3d 745, 756 (Tex.App.-Corp.Christi 2001, no pet.)……....23

*State v. Toone*, 872 S.W.2d 750, 752 (Tex.Crim.App. 1994)…………………….25

*Mahmoudi v. State*, 999 S.W.2d 69, 72 (Tex.App.-Houston [14ᵗʰ Dist] 1999)…...25

*Johnson v. State*, 263 S.W.3d 287, at 289 (Tex.App.-Houston [1ˢᵗ Dist] 2007)….27

*Lankston v. State*, 827 S.W.2d 907, 909 (Tex.Crim.App. 1993)………………...27

*Galitz v. State*, 617 S.W.2d 949, 952 (Tex.Crim.App. 1981)…………………...28

*Webb v. State*, 899 S.W.2d 814, 818 (Tex.App.-Waco 1995, pet. ref'd)………...28

*Dowthitt v. State,* 931 S.W.2d 244, 254 (Tex.Crim.App. 1996)………………....30

*Delacruz v. State*, 167 S.W.3d 904 (Tex.App.-Texarkana 2005, no pet.)………...30

*Williamson v. State*, 175 S.W.3d 522, 525 (Tex.App.-Texarkana 2005, no pet.)...31

*Jordan v. State*, 495 S.W.2d 949, 952 (Tex.Crim.App. 1973). …………………..31

*Jackson v. State*, 989 S.W.2d 842, 845 (Tex.App.-Texarkana 1999, no pet.)…......31

*Fluellen v. State*, 71 S.W.3d 870, 873 (Tex.App.-Texarkana 2002, pet. ref'd)..…31

*McGruder v. Puckett*, 954 F.2d 313,316 (5th Cir. 1992)…………………………..32

*Mullins v State*, 208 S.W.3d 496, 470 (Tex.App-Texarkana 2006, no pet.)……...32

*Acosta v. State*, 160 S.W.3d 204, 212 (Tex.App.-Fort Worth 2005, no pet.)…….32

*Williamson v. State*, 175 S.W.3d 522, 524 (Tex.App-Texarkana 2005, no pet.)…32

*Savery v. State*, 767 S.W.2d 242 (Tex.App.-Beaumont 1989)……………..…..33

*Speights v. State*, 2005 WL 2777537, (Texarkana unpublished opinion, no pet.)..35

*Lamarre v. State*, 2013 WL 781778, (San Antonio unpublished opinion, pet. ref'd)…………………………………………………………………....35

*Reynolds v. State*, 430 S.W.3d 467, 473 (Tex.App.-San Antonio 2014, no pet.)…35

*Jackson v. State*, 989 S.W.2d 842, 845 (Tex.App.-Texarkana 1999, no pet……...36

**STATUTES AND AMENDMENTS:**

Fourth Amendment, U.S. Constitution…………………………………..………..10

Article 1 Section 9, Texas Constitution……………………………..…………11

Federal Rules of Criminal Procedure, Rule 41…………………………………19

Article 2.09 Texas Code of Criminal Procedure……………………..…………26

Article 2.12 Texas Code of Criminal Procedure……………………………..26

Article 18.01(a) Texas Code of Criminal Procedure ……………………..…26

Article 18.06 Texas Code of Criminal Procedure…………………………...…18

Article 18.07 Texas Code of Criminal Procedure …………………………..…18

Article 38.23(a), Texas Code of Criminal Procedure…………………………..25

TEX.PEN.CODE ANN sec. 3.03(b)(3)(A)……………………………………31

Article 1 Section 14, Texas Constitution…………………………….......……..36

**PRELIMINARY STATEMENT OF THE NATURE OF THE CASE**

Appellant appeals his conviction based on a plea of guilty without a plea bargain after the denial of Appellant's motion to suppress.

**STATE'S REPLY ISSUE ONE**

The trial court did not commit reversible error in denying Appellant's motion to suppress. The affidavit provided probable cause for the issuance of the search warrant and the information contained in the affidavit for the search warrant was not stale or unreliable.

**STATES REPLY ISSUE TWO**

The trial court did not commit reversible error in denying Appellant's motion to suppress. Detective Brownlee was not functioning as a state actor for purposes of this investigation. Nor was this a cooperating investigation between state and federal law enforcement. Detective Brownlee was a member of a federal task force, the North Texas Internet Crimes Against Children task force (NTICAC) under the direction and control of the United States Secret Service with the specific federal mandate from the President of the United States to investigate crimes against children over the internet and

1

was recruited to help achieve that federal mandate. Therefore the protections of the Texas Constitution and Texas law do not apply under the "reverse silver platter" doctrine.

Assuming arguendo that the court finds this was a "cooperating investigation", then Appellant is only entitled to the protections of article 1 sec. 9 of the Texas Constitution; and the provisions of Texas Code of Criminal Procedure art. 18.06 and 18.07 do not apply because a federal search warrant issued by a federal magistrate and directed to a federal officer is not governed by the requirements of art. 18.06 and 18.07 of the Texas CCP.

## STATES REPLY ISSUE THREE

The trial court did not commit reversible error in refusing to suppress the statements made by Appellant to law enforcement on May 22, 2013. This issue was not preserved for Appellate review. Trial counsel did not object at the motion to suppress that Appellant's statements were made as a result of "custodial interrogation". Even should the court find the issue was preserved, looking at the totality of the circumstances the Appellant was not "in custody" at the time his statements were made.

## STATES REPLY ISSUE FOUR

The trial court did not err in finding the sentence assessed violated the Eight Amendment to the United States Constitution because the sentence received was not "grossly disproportionate" to the offense committed.

## STATEMENT OF THE FACTS

For the sake of brevity, the state will not recite the entire search warrant affidavit and findings of fact and conclusions of law in this brief.

The North Texas Internet Crimes Against Children Task Force (NTICAC) is a federal task force. (RR Vol. 1 MTS p. 47). The mandate of the NTICAC task force is to seek out and arrest those who engage in the trafficking of child pornography and the exploitation of children through the use of the internet. (RR Vol. 1 MTS p. 48). Detective Brownlee of the Longview Police Department was working for this federal task force. (RR Vol. 1 MTS p. 47). The Secret Service has a mandate from the President of the United States to investigate child pornography cases. (RR Vol. 1 MTS p. 50). The Secret Service has limited manpower to achieve this federal mandate. (RR Vol. 1 MTS p. 49). The Secret Service recruits other law enforcement agencies into the NTICAC task force to achieve this mandate. (RR. Vol. 1 MTS p. 48-49). Members of the NTICAC are under the

3

direction and control of the Secret Service. (RR Vol. 1 MTS p. 49). Throughout the entire investigation of Appellant, Detective Brownlee was working for the NTICAC federal task force. (RR. Vol. 1 MTS p. 54-55). The trial court made findings of fact and conclusions of law (CR Vol. 1(A) p. 4-9).

While working for the NTICAC task force, Detective Brownlee was involved in an ongoing online investigation into the trafficking of child pornography within the Eastern District of Texas. (CR Vol. 1(A) p. 15). During his investigation, using Child Protection Systems (CPS) software, an IP address 70.254.37.233 was actively advertising files for sharing on the Gnutella network which appeared to be child pornography. (CR Vol. 1(A) p. 14) CPS is a law enforcement maintained database. (CR Vol. 1(A) p. 14). This IP address was seen advertising known files of child pornography from March 16, 2013 to April 24, 2013. (RR Vol 1 MTS p. 39). The information maintained by CPS provides the date and time an IP address was on a specific network, what types of files were advertised for sharing, the names of the files available for sharing and the associated SHA-1 value of the files. (CR Vol. 1(A) p. 16). A SHA-1 hash value is a unique identifier of files available for share on a P2P network. (CR Vol. 1(A) p. 12-13). CPS is also able to access a database of known child pornography SHA-1 values to compare with the files being made available by an IP address on the

network. (CR Vol. 1(A) p. 16). CPS's database of known child pornography SHA-1 values is populated through the efforts of law enforcement investigators who have viewed the files and identified them as child pornography. (CR Vol. 1(A) p. 16). CPS has been proven to be extremely reliable in locating computers that are involved in P2P facilitated trading of child pornography. (CR Vol. 1(A) p. 14). No two files available for share on a peer-to-peer network will have the same SHA-1 hash value unless the files are identical. (CR Vol. 1(A) p. 13). By comparing hash values, there is a 99.9999 percent certainty the two files are the same. (CR Vol. 1(A) p. 13).

Gnutella is a peer-to-peer (P2P) network. (RR. Vol.1 p. 16). A P2P is a type of internet network that allows a group of computer users with the same networking software to connect with each other and directly access files from one another's hard drives or removable media. (CR Vol. 1(A) p. 10).

Due to conditions beyond Detective Brownlee's control, a connection to the computer at IP address 70.254.37.233 was not possible during the time frame he was on the internet, so no download of any files was performed from the suspect IP address. (CR Vol. 1(A) p. 16). However, Detective Brownlee was able to obtain a listing of the file descriptions and related SHA-1 values which the IP address 70.254.37.233 was advertising as available for sharing. (CR Vol. 1(A) p. 17).

Detective Brownlee then used a file sharing client for the Gnutella network and obtained several of the same files by SHA-1 value available for sharing by the computer at IP address 70.254.37.233, and then confirmed that the files being offered by 70.254.37.233 were child pornography. (CR Vol. 1(A) p. 17). In addition, Detective Brownlee noted the IP address 71.254.37.233 was observed by the CPS system from March 16, 2013 to April 24, 2013 with 124 known files of child pornography being offered for download. (CR Vol. 1(A) p. 17) The SHA-1 values of these 124 files were identified as matches to the SHA-1 values of known child pornography by the CPS system. (CR Vol. 1(A) p. 17-18) In each of these instances, the computer at 70.254.37.233 was observed with the same Globally Unique Identifier (GUID), E94D7E7D770EC1878947882390866F9C, indicating the same computer was utilized each time. (CR Vol. 1(A) p. 18). A GUID, is a unique 128-bit number that is produced by the Windows operating system or a windows application to identify a particular component, application, file, database entry, or user. (CR Vol. 1(A) p. 18).

Detective Brownlee conducted a domain name system check on the IP address 70.254.37.233 through the American Registry for Internet Numbers and received information that the IP address 70.254.37.233 was registered SBC/AT&T internet services. (CR Vol. 1(A) p. 18). Subscriber information was subpoenaed

from SBC/AT&T for that IP address from the dates of March 16, 2013 to April 24, 2013 corresponding to the exact dates and times the CPS system saw that IP address on the P2P network offering known files of child pornography for download. (RR Vol. 1, p. 31). SBC/AT&T Internet Services responded on May 8, 2013, and showed the subscriber for IP address 70.254.37.233 for the dates and times requested was Norma Arnold at 3368 Rupe Huffman Road, Longview, Texas 75605. (CR Vol. 1(A) p. 18). Detective Brownlee recognized the address from a previous investigation he conducted in August of 2013 in which a computer with GUID 810F2E6C830E37C85071C75089646F1B was observed at IP address 75.23.47.93 from August 17, 2012 to August 29, 2012 by the CPS system with 121 known files of child pornography. (CR Vol. 1(A) p. 18-19) An administrative subpoena for this 2012 activity found the subscriber then was also Norma Arnold at 3368 Rupe Huffman Road, Longview, Texas 75605. (CR Vol. 1(A) p. 19). The Texas Department of Public Safety (DPS) Fusion Center conducted a search of 3368 Rupe Huffman Road, Longview, Texas 75605 and indicated that Appellant lived at that location with two others. (CR Vol. 1(A) p. 19).

The results of Detective Brownlee's investigation were forwarded to the affiant of the federal search warrant, Special Agent Michael Dawson of United States Secret Service, who prepared the federal search warrant. (RR Vol. 1 MTS p.

7

7). Agent Dawson has worked with Detective Brownlee in the past and found him to provide reliable information and to be a reliable colleague. (RR Vol. 1, MTS p. 22). Detective Brownlee testified that the results of any investigation performed for the NTICAC task force have to go through the Secret Service, and he was under their direction and control. (RR. Vol. 1 MTS p.48-49).

The federal search warrant was signed on May 14, 2013 by United States Magistrate Judge Judith Guthrie (CR Vol. 1(A) p. 30). The search warrant was executed on May 22, 2013 at 3368 Rupe Huffman Road, Longview, Texas, 75605. (RR. Vol. 1 MTS p. 33). This search warrant was executed by Agent Todd Hiles of the United States Secret Service, Detective Brownlee, and various members of local law enforcement were recruited to insure appropriate manpower (RR Vol. 1 MTS p. 33-35). Hard drives and computers were seized during the search of Appellant's home and these drives were forensically analyzed and did in fact contain child pornography. (RR Vol. 1 MTS p. 51). Detective Brownlee and Special Agent Todd Hiles of the United States Secret service also traveled to Appellant's place of employment after the search warrant was executed. (RR Vol. 1 MTS p. 35). Agent Hiles and Detective Brownlee conducted an interview with Appellant in a car Agent Hiles was driving. (RR Vol. 1 MTS 50). Appellant was not under arrest, Appellant was not handcuffed or restrained in any way, Appellant

8

was not in custody, and Appellant was told he was free to leave and did in fact leave at the conclusion of the interview. (RR Vol 1 MTS p. 50-51). Appellant made incriminating statements during the interview in which he confessed to possessing child pornography. (RR Vol 1 MTS p. 51).

Detective Brownlee testified that throughout the entire course of the investigation, from beginning to end, that he was working for the NTICAC Federal Task Force and not as a member of the Longview Police Department. (RR Vol. 1 MTS p. 54-55). After denial of Appellant's motion to suppress, Appellant entered a plea of guilty without a plea agreement and was sentenced by the trial court to eight years on each of the thirty counts of possession of child pornography and the trial court ordered that all thirty counts run consecutively. This appeal followed.

## ARGUMENTS AND AUTHORITIES

## SUMMARY OF THE ARGUMENT REPLY ISSUE ONE

The trial court did not commit reversible error in denying Appellant's motion to suppress. The affidavit provided probable cause for the issuance of the search warrant and the information contained in the affidavit for the search warrant was not stale or unreliable.

# ARGUMENTS AND AUTHORITIES REPLY ISSUE ONE

A search warrant may not legally issue unless it is based on probable cause. U.S. Const. amend. IV. An appellate court normally reviews a trial court's ruling on a motion to suppress by using a bifurcated standard of review, giving almost total deference to the historical facts found by the trial court and reviewing *de novo* the trial court's application of the law. *Amador v. State*, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007). However, when assessing the sufficiency of an affidavit for a search warrant, the reviewing court is limited to the four corners of the affidavit. *Hankins v. State*, 132 S.W.3d 380, 388 (Tex.Crim.App. 2004). Accordingly, when we review a magistrate's decision to issue a warrant, we apply a highly deferential standard because of the constitutional preference for searches to be conducted pursuant to a warrant as opposed to a warrantless search. *Swearingen v. State*, 143 S.W.3d 808, 810-11 (Tex.Crim.App. 2004). As long as the issuing magistrate had a substantial basis for concluding that probable cause existed, we will uphold that magistrate's probable cause determination. *State v. McLain*, 337 S.W.3d 268, 271 (Tex.Crim.App. 2011). The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, including reasonable inferences that may be drawn therefrom and the "veracity" and "basis of knowledge" of persons supplying information, there is a

10

"fair probability" that contraband or evidence of a crime will be found at the specific location. *Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex.Crim.App. 2007) (citing *Illinois v. Gates*, 462 U.S. 213, 234-37, 103 S.Ct. 2317, 76 L.Ed.2d 527(1983)). "The traditional standard for review of an issuing magistrate's probable-cause determination has been that so long as the magistrate had a 'substantial basis for … concluding' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Gates*, 462 at 236, 103 S.Ct. 2317. Warrants should not be invalidated through "hyper-technical" interpretation of their supporting affidavits. *McLain*, 337 S.W.3d at 271. Whether the facts alleged in a probable cause affidavit support a search warrant is determined by examining the totality of the circumstances. *Gates*, 462 U.S. at 230-31, 103 S.Ct. 2317. Using the *Gates* standard, the question in this case is whether, using a common-sense approach, the federal magistrate had a substantial basis for finding that there was a fair probability that the child pornography would be found in Appellant's residence. *Id*. At 238, 103 S.Ct. at 2332.

Assuming arguendo that Appellant is entitled to the protections of the art. 1 sec. 9 of the Texas Constitution, there is still sufficient probable cause for the issuance of the federal search warrant. The Texas Court of Criminal Appeals adopted a "totality of the circumstances" approach in interpreting art. 1 sec. 9 of

11

the Texas Constitution. *Eisenhauer v. State*, 754 S.W.2d 159, 164 (Tex.CrimApp. 1988). "In order to issue a valid warrant …, the underlying affidavit must contain, viewed in the totality of the circumstances, information sufficient to justify a neutral and detached magistrate issuing it." *State v. Martin*, 833 S.W.2d 129, 132 (Tex.Crim.App.1992). In *Johnson v. State*, 864 S.W.2d 708, 717-719 (Tex.App.-Dallas 1993, affirmed), the court held that there was no historical or textual basis for affording a defendant greater rights under art. 1, sec. 9 than under the Fourth Amendment. *see also Murray v. State*, 864 S.W.2d 111, 115 (Tex.App.-Texarkana 1993, pet. ref'd)(no Texas statute or case requires a more restrictive standard of review for … probable cause under art. 1, sec. 9 than under the Fourth Amendment).

Appellant argues that there was no probable cause to support the issueance of the search warrant. An examination of the totality of the circumstances and using a common-sense approach in examining the affidavit, there was more than enough information to support the federal magistrate's decision that there was a substantial basis for finding a fair probability that there would be child pornography located at the Appellant's residence. Detective Brownlee observed the Appellant's IP address offering files for share whose SHA-1 hash values were compared to SHA-1 hash values of known files of child pornography, and the

12

affiant of the warrant knew through his experience in investigating these types of crimes that there is 99.9999 percent certainty the files are identical and would in fact be child pornography. The IP address Appellant was using was registered to the physical address he was living at from March 16, 2013 to April 24, 2013 during which time that IP address was identified as offering child pornography for download. The GUID that was being used by that IP address was the same during that timeframe as well, indicating it was the same computer at the Appellant's residence that was being used to share child pornography over the internet. In addition, the same address Appellant was residing at was shown to be the physical subscriber address for IP address 70.254.37.233 during March 16, 2013 to April 24, 2013. Additionally that same physical address was shown as the subscriber address for another IP address from a previous investigation back in August of 2012 as a location from which child pornography was being offered for share over the internet. Using a totality of the circumstances and a common-sense approach there was sufficient probable cause in the affidavit to support the issuance of the federal search warrant.

Appellant also argues that the information contained in the affidavit for the search warrant was "stale" at the time of its issuance. To invalidate a warrant, the facts relied upon in the probable cause affidavit must not have become "stale" by

13

the time the warrant is issued. *Kennedy v. State*, 338 S.W.3d 84, 93 (Tex.App.-Austin, no pet.). "The amount of delay that will make information stale for search warrant purposes depends upon the particular facts of a case, including the nature of criminal activity and the type of evidence sought. Mechanical count of days is of little assistance in this determination; but, rather, common sense and reasonableness must prevail, with considerable deference to be given to the magistrate's judgment based on the facts before him, absent arbitrariness." *Ellis v. State*, 722 S.W.2d 192, 196-97 (Tex.App.-Dallas 1986, no pet.), citing *United States v. Freeman*, 685 F.2d 942 (5th Cir. 1982). "Where the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant." *Bernard v. State*, 807 S.W.2d 359, 365 (Tex.App.-Houston [14th Dist.] 1991, no pet.), quoting *United States v. Johnson*, 461 F.2d 285, 287 (10th Cir.1972)

The "proper method to determine whether facts supporting a search warrant have become stale is to examine, in light of the type of criminal activity involved, the time elapsing between the occurrence of the events set out in the affidavit and the time the search warrant was issued." *Crider v. State*, 352 S.W.3d 704, 707 (Tex.Crim.App. 2011). Although the passage of time is one factor that should be considered when determining if the information in an affidavit is stale, the amount

14

of time passed is less significant if the affidavit contains facts showing "activity of a protracted and continuous nature, i.e., a course of conduct." *Kennedy*, 338 S.W.3d at 93. Further, a determination regarding whether the information in an affidavit is stale should also involve consideration of the type of property to be seized and the probability that the property has been consumed or relocated. *Id.*

The Court of Appeals in Amarillo in *State v. Cotter*, 360 S.W.3d 647 (Tex.App.-Amarillo, 2012 no pet.) was faced with analogous facts facing this court today. In deciding that the search warrant was not stale even though four months had passed since the last occurrence of the events set out in the affidavit and the issuance of the search warrant, the Amarillo Court of Appeals reasoned "the property the subject of the search, a pornographic video transmitted over the internet via digital media, is the type of item that is customarily uploaded onto the internet and/or downloaded and stored on a personal computer, and such property is often retrievable even after it had been purportedly erased from that computer." *Cotter* at 654 (*citing McKissick v. State*, 209 S.W.3d 205, 215 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd)). "Furthermore, that type of property is not transient in nature such as drugs which are consumable. *Id.* In concluding the warrant in *Cotter* was not stale the court summed up its reasoning as follows: "Considering the affidavit as a whole and the reasonable inferences it supports, we conclude the

15

issuing magistrate had a substantial basis to find that a fair probability existed that the evidence sought would continue to be on or be recoverable from Appellee's computer and that that computer would be readily accessible to Appellee at his residence." *Id*.

Assuming arguendo, Appellant is entitled to the protections of the Texas Constitution, nowhere in Appellants brief does he contend that different standards should apply for evaluating the timeliness of information under the federal and state constitutions. Therefore the state contends that the "totality of the circumstances" analysis applies to Appellant's staleness argument.

The affiant to the search warrant Agent Dawson indicated in his affidavit that subjects who distribute child pornography are often collectors who escalate their activity for the purposes of trading and adding to their vast collections. And that these collections are maintained for several years and are kept close by, usually at the collector's residence. (CR Vol. 1(A) p. 22-24) Agent Dawson also provided in his affidavit that computer files or remnants of such files can be recovered months or even years after they been downloaded onto a hard drive, deleted or viewed via the internet using available forensic tools. (CR Vol. 1(A) p. 21).

The Appellant's IP address was seen advertising files of child pornography for share from March 16, 2013 to April 24, 2013. The search warrant was issued May 8, 2013. Given the kind of criminality involved this was conduct of a "protracted and continuous nature". Furthermore the affiant provided information that Detective Brownlee observed the Appellants same address in August of 2012 offer child pornography for share via the internet from a different GUID and IP address. This is further evidence of conduct of a protracted and continuous nature for over a year. (CR Vol. 1(A) p. 18).

Based on the information contained in the affidavit and looking at the type of evidence to be seized (i.e. child pornography), this was activity of a protracted and continuous nature, that individuals who collect child pornography often do so for years and escalate their behavior retaining the child pornography, and that often digital files of child pornography can often be recovered on a computer long after they are deleted; based on the "totality of the circumstances" the information contained in the affidavit had not become "stale" or "unreliable".

## SUMMARY OF THE ARGUMENT REPLY ISSUE TWO

The trial court did not commit reversible error in denying Appellant's motion to suppress. Detective Brownlee was not functioning as a state actor for purposes of this investigation. Nor was this a cooperating investigation between state and federal law enforcement. Detective Brownlee was a member of a federal task force, the North Texas Internet Crimes Against Children Taskforce (NTICAC) with the specific federal mandate from the President of the United States to investigate crimes against children over the internet and was recruited to help achieve that federal mandate. Therefore the protections of the Texas Constitution do not apply under the "reverse silver platter" doctrine.

Assuming arguendo that the court finds this was a "cooperating investigation", then Appellant is only entitled to the protections of art. 1 sec. 9 of the Texas Constitution. The provisions of Texas Code of Criminal Procedure art. 18.06 do not apply because a search warrant issued by a federal magistrate and directed to a federal officer is not governed by the requirements of art. 18.06 and 18.07 of the Texas CCP.

# ARGUMENTS AND AUTHORITIES REPLY ISSUE TWO

It is uncontroverted by either party that the federal search warrant in this case was issued on May 14, 2013 and was executed on May 22, 2013. It is all also uncontroverted that the search warrant in this case was issued by a federal magistrate and directed to a federal officer and was served within the appropriate time frame allowed by Federal Rule of Criminal Procedure, Rule 41, allowing the federal search warrant to be executed within 14 days.

The entire crux of Appellant's argument is that if the "reverse silver platter" doctrine does not apply to the facts of this case, then Appellant is also entitled to the full protection of Texas law and the Texas Constitution, meaning (according to Appellant) that the federal search warrant in this case would have to be served within three days under the Texas Code of Criminal art. 18.06 and 18.07. This argument fails for the following reasons:

1. Detective Brownlee was recruited to join the NTICAC federal task force and was working to achieve its federal mandate and was not operating as a state actor at any time during the investigation of this case nor during the execution of the warrant.

2. Assuming arguendo, even if the court finds the actions of law enforcement to be a cooperating investigation entitling the defendant to protection of the

Texas Constitution; art. 18.06 and 18.07 of the Texas Code of Criminal Procedure do not apply to a federal search warrant. The Appellant would only be entitled to an analysis under art. 1, sec. 9 of the Texas Constitution as to probable cause for the issuance of the warrant and staleness, Appellant is not entitled to any greater protection under the Texas Constitution which was argued above in state's reply issue one.

Evidence that is obtained by federal agents acting lawfully and in conformity with federal authority is admissible in state proceedings. *Gutierrez v. State*, 22 S.W.3d 75, 84 (Tex.App.-Corpus Christi 2000, no pet.) This has been referred to as the "reverse silver-platter" doctrine. *Id*. The underlying concept of the reverse silver-platter doctrine is that "protections afforded by the constitution of a sovereign entity control the actions only of the agents of that sovereign entity." *State v. Toone*, 823 S.W.2d 744, 748 (Tex.App.-Dallas 1992), aff'd on other grounds, 872 S.W.2d 750 (Tex.Crim.App.1994). Thus a state constitution will not be applied to control the conduct of officers of a foreign jurisdiction. *State v. Mollica*, 114 N.J. 329, 554 A.2d 1315, 1325 (1989). Simply put, "state constitutions do not control federal action." *Id*. At 1327. Because federal officers operate throughout all the various states, in the exercise of federal jurisdiction,

under federal authority, and in accordance with federal standards, they are treated in state courts as officers from another jurisdiction. *Id*. At 1327. Thus, the general rule is that evidence seized by federal agents, acting lawfully and in conformity with federal standards, will be admissible in state courts, even though the actions of the federal agents may not have met a higher burden imposed by the state constitution. *Gutierrez*, 22 S.W.3d at 84; *Toone*, 823 S.W.2d at 748 (citing *Mollica*, 554 A.2d at 1328). This rule, however, is subject to a significant caveat. Where the state seeks to introduce evidence seized by federal action, it is vital that the action "not be alloyed by any state action or responsibility." *Mollica*, 554 A.2d at 1329. In other words, federal agents "may not act as agents of the state police or 'under color of state law'." *Toone*, 823 S.W.2d at 748 (citing *Mollica*, 554 A.2d at 1329). Thus, state participation in a federal search that did not comport with state constitutional protections could preclude the use of any evidence obtained in state criminal proceedings, even if federal constitutional safeguards were observed. *Lockett v. State*, 879 S.W.2d 184, 190 (Tex.App.-Houston [14th Dist] 1994, pet. ref'd). Where an operation involves actors from various jurisdictions then, the *entire relationship* (emphasis added) must be examined to determine whether such agency is established as to bring the federal agents under the color of state law. *Toone*, 823 S.W.2d at 748; *Mollica*, 554 A.2d at 1329; *Lockett*, 879 S.W2d at 190.

21

As stated by the *Toone* court, "Evidence of antecedent mutual planning, joint operations, cooperative investigations, or mutual assistance between state and federal officers may sufficiently establish agency and serve to bring the conduct of federal agents under the color of state law. Conversely, mere contact, awareness of ongoing investigations, or the exchange of information may not transform the relationship into one of agency." *Toone*, 823 S.W.2d at 748.

Not every operation, between state and federal actors, however, results in an agency relationship which would bring federal agents under color of state law. Federal agents often work in conjunction with other law enforcement authorities to achieve federal objectives and such cooperation alone does not invalidate searches made as part of a joint effort. *see People of Territory of Guam v. Villacrusis*, 992 F.2d 886, 887 (9th Cir. 1993). In upholding a border search involving the Customs Service, the Los Angeles Police Department, and various other federal and local law enforcement agencies, the Ninth Circuit Court of Appeals in *United States v. Alfonso* stated: "Given the specific authority granted customs agents to conduct border searches, there is no reason that the limited forces of the Customs Service cannot enlist the aid of other law enforcement entities in forming task forces to meet their needs." *United States v. Alfonso*, 759 F.2d 728, 735 (9th Cir. 1985). "In order for a search to be considered a federal search, rather than as state search, it is

22

enough that a border search conducted during such a collaborative effort be 'under the aegis of and in cooperation with Customs agents'." *Id.*

Accordingly, to determine whether the federal officials were operating as agents for the State of Texas rather than to achieve federal objectives … , we must review the reasons, motives, actions, and processes used by the officers to find, select, and seize the evidence. *Pena v. State*, 61 S.W.3d 745, 756 (Tex.App.-Corp.Christi 2001, no pet.).

Detective Brownlee testified at the suppression hearing that he was working for the NTICAC task force. (RR Vol. 1 MTS p. 47). This task force was under the direction and control of the United States Secret Service and that the mandate of the NTICAC was to seek out and arrest those who engage in the trafficking of child pornography and the exploitation of children through the use of the internet. (RR. Vol. 1 MTS p. 48-50). Detective Brownlee also testified that the United States Secret Service had limited manpower and other agencies were recruited to join the NTICAC task force in order to accomplish the federal mandate issued by the President of the United States. (RR. Vol. 1 MTS p. 49-50). In fact during his time with the NTICAC, Detective Brownlee testified his salary was being paid by a federal grant. (RR. Vol. 1 MTS p. 24).

The state concedes that at two locations in the federal search warrant the affiant refers to a: "joint investigation being conducted with the Longview Police Department." And "the Longview Police Department is jointly conducting this investigation with the United States Secret Service. In addition, the Secret Service and Longview Police Department will be working together in the execution of this warrant". (CR Vol. 1(A) p. 7 and p. 25). However, the state argues that merely by the affiant using the phrase "joint investigation" in the affidavit is not enough to bring the actions of the NTICAC task force and the Secret Service under the color of state law. As cited above, the court must look at the "entire relationship" between the federal and state actors to decide if this was a joint or cooperating investigation.

Detective Brownlee's testimony at the suppression hearing was crucial to the trial court in determining in its findings of fact and conclusions of law that Detective Brownlee was a member of the NTICAC federal task force at the time of this investigation. As stated by the *Pena* court above, it is where federal officers are acting as agents of the State of Texas attempting to circumvent Texas law rather than achieve federal mandates that is the core evil that offends the constitution. Detective Brownlee testified he was working as a member of a federal task force, achieving a federal mandate, under the direction of a federal agency

with limited manpower to achieve that mandate, and while he was a state law enforcement officer he was not functioning as a state actor. Based on the foregoing, the trial court did not commit reversible error in denying Appellant's motion to suppress.

Assuming arguendo that the court rules the NTICAC to be a cooperating investigation between the Longview Police Department and the Secret Service, Appellant is still not entitled to have the evidence seized from the federal search warrant suppressed because it was not served within three days as Appellant argues is required under article 18.06 and 18.07 of the Texas CCP.

Under the Texas exclusionary rule evidence is only excludable if it was obtained "in violation of" the Texas or United States Constitution or other Texas or federal law. TEX CODE CRIM.PROC.ANN. art. 38.23(a). Appellant claims the evidence pursuant to the federal search warrant was obtained in plain violation of art. 18.06 and 18.07.

However, the Texas Court of Criminal Appeals in *State v. Toone*, 872 S.W.2d 750, 752 (Tex.Crim.App. 1994) has expressly stated that a search warrant issued by a federal magistrate and directed to a federal officer is not governed by the requirements of article 18.01. *see also Mahmoudi v. State*, 999 S.W.2d 69, 72 (Tex.App.-Houston [14th Dist] 1999). The Court of Criminal Appeals in *Toone*

explained its reasoning by stating that: "a 'search warrant' is defined for purposes of article 18.01 as a written order, issued by a magistrate and directed to a peace officer. TEX.CODE.CRIM.PROC.ANN. art. 18.01(a). Article 2.09 of the Code of Criminal Procedure, *Magistrates*, lists persons who are 'magistrates' within the Code. Only various state and municipal court judges and magistrates are listed. *Id*. at 2.09. Article 2.12, *Who are Peace Officers*, enumerates persons who are 'peace officers' within the meaning of the Code. *Id*. at 2.12. Only state and local officers are included in this list. Article 18.01 does not purport to govern federal search warrants." *Toone* 872 S.W.2d at 752. The state contends that if federal search warrants are not governed by art 18.01 of the Texas CCP, then it logically follows that they are not subject to the requirement that they be served within three days as stated in art. 18.06 and 18.07. Therefore, even should the court find this was a joint or cooperating investigation, then Appellant has only preserved for appellate review the other objections actually made by counsel at the suppression hearing (i.e. no probable cause and staleness), and while trial counsel never specifically objected under art. 1 sec. 9 of the Texas Constitution at the hearing (Appellants trial counsel merely argued to the trial court there was "no probable cause" for the issuance of the search warrant) (RR Vol. 1 MTS p. 60) the state, out of an abundance caution, has addressed those issues above in state's reply one and two.

26

## SUMMARY OF THE ARGUMENT REPLY ISSUE THREE

The trial court did not commit reversible error in refusing to suppress the statements made by Appellant to law enforcement on May 22, 2013. This issue was not preserved for appellate review. Trial counsel did not object at the motion to suppress that Appellant's statements were made as a result of "custodial interrogation". Even should the court find the issue was preserved, looking at the totality of the circumstances the Appellant was not "in custody" at the time his statements were made.

## ARGUMENTS AND AUTHORITIES REPLY ISSUE THREE

To preserve an issue for appeal a party must timely object, stating the specific legal basis. *Johnson v. State*, 263 S.W.3d 287, at 289 (Tex.App.-Houston [1st Dist] 2007). An objection stating one legal theory may not be used to support a different legal theory on appeal. *Id*. "As regards specificity, all a party has to do to avoid forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do so something about it." *Lankston v. State*, 827 S.W.2d 907, 909 (Tex.Crim.App. 1993). "The requirement that an objecting party make a specific objection serves

27

two purposes. First, the trial court must be given an opportunity to correct the error…..Second, particularly in the context of a motion to suppress, a specific objection gives the opposing party an opportunity to respond to the objections and provide additional evidence if appropriate." *Galitz v. State*, 617 S.W.2d 949, 952 (Tex.Crim.App. 1981). The issue raised on appeal should comport with the objection made at trial, and the trial judge should have an opportunity to rule on the issue, otherwise nothing is presented for appellate review. *Johnson* at 289. Additionally, "shotgun" objections, citing many grounds for the objection without argument, will not preserve points based on authority which is merely mentioned in the trial court. *Webb v. State*, 899 S.W.2d 814, 818 (Tex.App.-Waco 1995, pet. ref'd) (*Johnson* at 290).

At no time during the suppression hearing did trial counsel for Appellant object or argue to the trial court that Appellant's statements to law enforcement should be suppressed based on any legal grounds. In fact the following conversation took place between state's counsel, Appellant's trial counsel, and the trial court on the record before the beginning of the hearing:

MR. CONNALLY: Your Honor, I think we can stipulate - - well, actually, Your Honor, I think the way to probably handle this hearing, I believe

we'll deal with the warrant first and then after that move to Mr. Houldtich's statement.

MR. HARRIS: Actually, it all deals with the warrant. The motion doesn't deal with the interview that was conducted in the back of the ---

MR. CONNALLY: Then were just dealing with the warrant then.

THE COURT: All right then. (RR. Vol. 1 MTS, p. 4).

Not only did Appellant's trial counsel not object at the suppression hearing or argue for the exclusion of any statements made by Appellant, but Appellant's trial counsel went even further, and expressly put on the record that his motion to suppress was not going to involve any statements made by the Appellant in this case. The issue that counsel for Appellant now makes for the first time on appeal was not properly preserved and therefore has been waived.

Should the court rule that the issue was preserved, it is still meritless. An examination of the record from the motion to suppress indicates that Detective Brownlee testified that the Appellant was not under arrest at the time of the interview, Appellant was not handcuffed or restrained in any way, Appellant was told he was free to leave, and Appellant did in fact leave and was not placed under arrest at the conclusion of the non-custodial interview. (RR Vol. 1 MTS, p. 50-51). Whether an interrogation is custodial depends on whether, under the

29

circumstances, a reasonable person would believe his or her freedom of movement was restrained to the degree associated with a formal arrest. *Dowthitt v. State,* 931 S.W.2d 244, 254 (Tex.Crim.App. 1996). Based on an examination of the record in this case, the state contends that no reasonable person in Appellant's situation would believe he was under arrest or that his freedom of movement was restrained.

## SUMMARY OF THE ARGUMENT REPLY ISSUE FOUR

The trial court did not err in finding the sentence assessed violated the Eight Amendment to the United States Constitution because the sentence received was not "grossly disproportionate" to the offense committed.

## ARGUMENTS AND AUTHORITIES REPLY ISSUE FOUR

The state concedes this issue is most likely properly preserved for appellate review. While Appellant's trial counsel did not object to the sentence at the time it was imposed, Appellant's counsel on appeal filed a motion for new trial and at that hearing made an objection to the sentence imposed under the Eight Amendment to the United States Constitution. This court has ruled that a motion for new trial is an appropriate way to preserve the claim that a sentence is disproportionate to the offense. *Delacruz v. State*, 167 S.W.3d 904 (Tex.App.-Texarkana 2005, no pet.).

Appellant in this case was sentenced to eight years in Texas Department of Criminal Justice – Institutional Division on all thirty counts of the indictment. The trial judge chose to impose consecutive sentences on all thirty counts under TEX.PEN.CODE ANN sec. 3.03(b)(3)(A), which provides the trial court the option of choosing whether sentences run concurrently or consecutively for convictions for multiple acts arising out of the same criminal episode for offenses of this type. Appellant argued at his motion for new trial and now on appeal that his sentence amounts to cruel and unusual punishment, and that the sentence is grossly disproportionate to the offense for which he was convicted.

Texas courts have traditionally held that, as long as the punishment assessed is within the range prescribed by the Legislature in a valid statute, the punishment is not excessive cruel, or unusual. *Williamson v. State*, 175 S.W.3d 522, 525 (Tex.App.-Texarkana 2005, no pet.). *see e.g., Jordan v. State*, 495 S.W.2d 949, 952 (Tex.Crim.App. 1973). However, this Court in *Jackson v. State*, 989 S.W.2d 842, 845 (Tex.App.-Texarkana 1999, no pet.) recognized that a prohibition against grossly disproportionate punishment survives under the Eight Amendment to the United States Constitution apart from any consideration of whether the punishment assessed is with the range established by the Legislature. *see also Fluellen v. State*, 71 S.W.3d 870, 873 (Tex.App.-Texarkana 2002, pet. ref'd). Texas courts have

adopted the disproportionality test used by the Fifth Circuit in *McGruder v. Puckett*, 954 F.2d 313,316 (5th Cir. 1992). In analyzing whether Appellant's sentence violates the Eight Amendment guarantee against cruel and unusual punishment, this court in *Mullins v State*, 208 S.W.3d 496, 470 (Tex.App-Texarkana 2006, no pet.) stated it compares the gravity of the offense with the severity of the sentence, and then, only if that initial comparison created an inference that the sentence was grossly disproportionate to the offense should there be a consideration of the other two *Solem* factors – (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions. *Id*. (*citing McGruder*, 954 F.2d at 316). Courts are to judge the gravity of the offense in light of the harm caused or threatened to the victim or society, and the culpability of the offender. *Acosta v. State*, 160 S.W.3d 204, 212 (Tex.App.-Fort Worth 2005, no pet.)

This Court has also recognized in *Williamson v. State*, 175 S.W.3d 522, 524 (Tex.App-Texarkana 2005, no pet.) that there is case law authority that cumulation of sentences does not constitute cruel and unusual punishment. *Id.* In *Williamson* the defendant received three consecutive life sentences for sexual assault of a child which this court found not to be "grossly disproportionate" to the offense committed. *Williamson* at 525.

In analyzing the gravity of the offense in light of the harm caused to the victim or society with the severity of the sentence, the state contends that possession of child pornography is just as serious and heinous as the offense of sexual assault of a child. "The Legislature may have determined that child pornography is even more damaging to the child victim than sexual abuse or prostitution, inasmuch as the helpless child's actions are reduced and memorialized on a recording or film and that type of pornography may haunt and damage the child for many long years in the future after the original misdeed occurred. Indeed, the effect is devastating and of long duration on the child who has been photographed performing certain acts. The child must go through his adult life with the knowledge that the recording or picture or photograph or film exists and may, and some time in later years, be distributed or circulated." *Savery v. State*, 767 S.W.2d 242 (Tex.App.-Beaumont 1989).

Appellant in this case was charged with thirty counts of possession of child pornography, however, testimony at the guilty plea revealed that the state questioned Appellant about having over 3,000 different images of child pornography, which the Appellant could not refute. (RR. Vol. 2 MTS p.31). The trial court reviewed state's exhibit #6, the child pornography Appellant was indicted for possessing. These videos and images contain graphic and horrific

33

scenes of sexual abuse of children as young as the age of five and six, engaging in sexual acts with each other, and often, adult men. The trial court stated it spent hours reviewing the evidence in state's exhibit #6 and had to view it in two different sessions because it was so upsetting to view. (RR Vol. 2 MTS p. 74). The trial court indicated it lost sleep over viewing these videos and images because of their nature, was glad it did not have to view all 3,000, and only considered not assessing the maximum sentence of ten years on each count because the Appellant accepted responsibility by way of a guilty plea; and the trial court went further to say that it was sentencing the defendant based on the nature of his crime and was not trying to "send a message". (RR Vol. 2 MTS, p. 75). It is clear from the record that the trial court clearly considered the nature of the evidence before deciding to cumulate the sentences imposed. The trial court's aggregated sentence, although lengthy, was within the parameters established by the legislature for the type of crime committed. The trial court was within its discretion to weigh and assess the evidence, the circumstances, the Appellant, and the nature of the crime in imposing sentence.

The state could not after due diligence locate any case by a Texas court where a sentence for child pornography or child sexual assault was overturned because the sentence was "grossly disproportionate" to the offense committed.

This Court in an unpublished opinion in *Speights v. State* upheld the imposition of a 250 year sentence out of the 71ˢᵗ District Court of Harrison County (the same court which assessed Appellant's sentence) on two counts of indecency by sexual contact, one count of indecency by exposure, and ten counts of promotion or production of child pornography which the trial judge assessed the maximum sentence and ordered they run consecutively and ruled the sentence imposed was not grossly disproportionate to the crime. *Speights v. State*, 2005 WL 2777537, (Texarkana unpublished opinion, no pet.). In another unpublished opinion out of the San Antonio Court of Appeals in *Lamarre v. State* the court upheld a 220 year sentence on twenty-two separate counts of child pornography which the trial ordered run consecutively. *Lamarre v. State*, 2013 WL 781778, (San Antonio unpublished opinion, pet. ref'd). However, the state concedes in *Lamarre* it does not appear an Eight Amendment claim was raised on appeal. In *Reynolds v. State*, the San Antonio Court of Appeals also upheld a sentence on eighty counts of child pornography in which a ten year sentence was assessed on each count and eight counts were ordered to run consecutively and found that because of the nature of the evidence, could not say that the trial court's sentence was grossly disproportionate to his conduct. *Reynolds v. State*, 430 S.W.3d 467, 473 (Tex.App.-San Antonio 2014, no pet.). Based on the conduct of the Appellant, the

35

nature of the evidence in this case, as well as the long lasting and damaging impact that child pornography has on the children affected, the trial court did not commit reversible error in ordering that the eight year sentences on thirty counts run consecutively.

Appellant presented several cases to the trial court in his motion for new trial. However, all of the cases cited are from other federal jurisdictions and Appellant cited to no cases for similar crimes in the same jurisdiction, failing to meet his burden under the proportionality test set out in *McGruder*.

Counsel for Appellant during his motion for new trial also argued the sentence imposed violates art. 1 sec. 13 of the Texas Constitution, however, Appellant cites to no Texas case that entitles Appellant to either greater protection against cruel or unusual punishment, or a different analysis under the Texas Constitution. A view this Court recognized in *Jackson v. State*, 989 S.W.2d 842, 845 (Tex.App.-Texarkana 1999, no pet.)("Although Jackson cites a number of cases where Texas constitutional provisions have been interpreted to give greater rights than their federal counterparts, he cites no Texas case that has interpreted the Texas prohibition against cruel or unusual punishment differently from the federal prohibition against cruel and unusual punishment." *Jackson* at 845).

Appellant also argues that counsel for the state during Appellant's guilty plea said his motion to cumulate sentences was "outrageous". This is a misrepresentation. An examination of the entire closing argument shows how state's counsel argued that the sentence the state was asking for was appropriate given the nature and severity of Appellant's crime, and a plea for law enforcement asking the trial judge to deter others from engaging in the same criminality as the Appellant. (RR Vol. 2 MTS, p. 70-73).

## PRAYER

The trial court having committed no reversible error, the state respectfully

prays this Court affirm the verdict and judgment of the court below.

> Respectfully Submitted
> Coke Solomon
> Criminal District Attorney
> Harrison County, Texas

> By:    /s/ Shawn Eric Connally
> _____

> Shawn Eric Connally
> Assistant Criminal District Attorney
> Bar #24051899

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Brief of the Appellee has been sent to the attorney for Appellant, Lew Dunn, on the 15th day of June, 2015.

> /s/ Shawn Eric Connally
> _____
> Shawn Eric Connally

## CERTIFICATE OF COMPLIANCE

I hereby certify compliance with T.R.A.P 9.4(i)(3), and that the number of words in this document is 9130.

> /s/ Shawn Eric Connally
> _____
> Shawn Eric Connally